STATE OF MINNESOTA *vs.* THOMAS BROWN.

July 22, 1889.

**Murder—Presumption from Fact of Killing.**—The offence of murder in the first degree may be proved by the mere fact of the killing, and the attendant circumstances; and, where there are no circumstances to prevent or rebut the presumption, the law will presume that the unlawful act was malicious as well as intentional, and was prompted and determined on by the ordinary operations of the mind.

**Same—Existence and Duration of Premeditation.**—The law does not attempt to define the length of time within which the determination to murder or commit the unlawful act resulting in death must be formed. And to infer the existence of premeditation does not require the lapse of any precise or definite period of time.

**Charge—Exception to Fragment.**—Where the charge of the court as a whole presents the legal questions involved clearly and intelligently to

the jury, an exception to an isolated portion thereof, which it is apparent could not mislead when considered in the connection in which it was given, will not be sustained.

**Appeal—Record must show Error.**—On appeal in a criminal case from an order denying a new trial, the record in this court must affirmatively show the errors complained of.

Defendant was tried in the district court for Clay county, before *Mills*, J., and a jury, on an indictment for murder in the first degree, was convicted, and was sentenced to death. He appeals from the judgment and from an order refusing a new trial. The circumstances of the crime are stated in the opinion. In its charge, the court, after stating that the defendant, by his own evidence as a witness, was guilty of murder in some one of the three degrees, and after stating the provisions of the Penal Code as to the degrees of murder, instructed the jury as follows:

"The defendant's assault on Poul (the deceased) with this revolver was a felony, even if committed in the manner and for the purpose testified to by the defendant, and, resulting in the death of Poul, it would be murder in the third degree, even if there was no intention to kill.

"By the use of the word 'deliberation' in the statute the idea is conveyed that the perpetrator weighed the motive for the act and its consequences, the nature of the crime or other things connected with his intention, with a view to a decision thereon; that he considered all these and that the act is not suddenly committed. There is no prescribed time for either premeditation or deliberation. If the perpetrator forms the intention, debates it in his mind, and finally makes the choice, [no matter how short the struggle, there is sufficient premeditation and deliberation.] It is enough if there is time for the mind to think upon it, to consider the act of killing, to meditate upon it, and then to determine it. And this of course depends upon the activeness of the mind of the perpetrator. You have seen the defendant upon the stand, and you can judge somewhat of the activity of his mind from the manner in which he testified. [If he debated the question of the killing in his mind for any length of time, even

an instant, and as a result of such debate determined the question and acted upon the determination thus made, he is guilty of murder in the first degree.]

"It is admitted by the defendant that he met Thompson, the policeman, in the hall of the ball-room, and that he then drew a revolver and drove the officer from the place of meeting to the railroad, and all the time he had him covered with the revolver; and all this was done simply to prevent an arrest which he feared. In doing this he was engaged in an unlawful act. The fear of an arrest will not even justify the assault upon an officer, much less the killing; and if the defendant, during the time he was assaulting Thompson with the pistol, deliberated upon the killing of any one who should interfere with him in his assault upon the officer, or attempt his arrest or assist the officer he was assaulting, and in pursuance of said deliberation he fired the shot and killed Poul, he would be guilty of murder in the first degree. And in this connection I will say to you that the law presumes every man to intend the natural consequences of his acts; and when one kills another with a deadly weapon, the law presumes that the killing is intentional and malicious.

"If you find from the evidence beyond a reasonable doubt, taking into consideration the instruction I have given you, that the defendant killed Poul with a deliberate and premeditated design to effect his death, you will find him guilty of murder in the first degree. If you find that the killing was intentional, but without deliberation or premeditation, you will find him guilty of murder in the second degree. If you find that he is not guilty of either the first or second degree, you will find him guilty of murder in the third degree."

The defendant excepted to that part of the charge which precluded a conviction of manslaughter, and to those portions of the instructions as to premeditation which are enclosed in brackets [ ].

*Taylor Crum,* for appellant.

*Moses E. Clapp,* Attorney General, and *W. B. Douglas,* for the State.

VANDERBURGH, J. The defendant was convicted of the crime of murder in the first degree, and appeals to this court from an order denying a new trial.

1. The court charged the jury that upon the evidence in the case the defendant was guilty of either murder in the first degree, or murder in the second degree, or murder in the third degree, as defined by the Code. The homicide took place at about midnight. The defendant was a stranger in the town, and according to his own statement he had left a neighboring city to escape arrest. He was seen at several different saloons during the evening, and finally went to a dance-hall, where he observed two policemen, who he suspected were waiting an opportunity to arrest him. This was about 12 o'clock or a little later. He thereupon went up to them, drew his revolver, and, holding it in a threatening position, ordered them to go down-stairs, and kept it pointed at one of them as they moved some distance up the street, until another policeman, the deceased, started to go towards them, and when he got within about 30 feet of the defendant the latter turned and shot him, and from the wound he almost instantly died. By this time the first-named policeman was enabled to draw his revolver. Several shots were thereupon exchanged between him and defendant, and not until he had emptied all the barrels of his revolver did the defendant surrender. No words passed between the deceased and the defendant, nor is there any evidence that the latter was prompted by any sudden impulse arising from provocation or other adequate or proximate cause. The defendant was apparently calm, determined, and free from excitement, and he himself testified that he held the policeman under cover of his revolver in the street; that he saw somebody on the sidewalk coming towards him, and that he turned around and fired; and that his purpose was to get away. He says he "heard the noise, and fired in that direction." He also says on his direct examination that "he thought it was Benson, the Fargo policeman, and he turned around and fired to scare him away; that he wanted to get away from them." The evidence shows that it was a bright, clear night. That portion of the charge we have referred to, and which is assigned as error, was fully warranted by the evidence. From the defendant's own evidence his offence was not of a less grade than murder in the third degree. The Code makes several material changes in the law of homicide as existing when it took effect. The definitions of murder in the sec-

ond degree and in the third degree, substantially as found in Gen. St. 1878, *c.* 94, § 2, are consolidated in one section, (Penal Code, § 155,) each division by itself constituting a distinct offence, and styled the crime of murder in the third degree. Putting the most favorable construction upon the defendant's evidence, his offence would at least fall within the first division of that section.

2. Under Gen. St. *c.* 94, § 22, "the killing of a human being by another in the heat of passion, upon sudden provocation, * * * intentionally, but without premeditation, is manslaughter in the second degree." But under the Code this is changed, and manslaughter, except in the cases provided for in sections 161, 162, is committed "without a design to effect death," (§ 160,) while murder in the second degree, by section 153, is the killing of a human being, "committed with a design to effect the death of the person killed, or of another, but without deliberation or premeditation." Under this section must be classed the cases formerly enumerated under the head of manslaughter in the second degree, above referred to. The definition of murder in the first degree remains unchanged, and the character and degree of proof required to establish the guilt of an accused person under this section has not been modified by the Code. The offence may be found to be of this grade from the mere fact and circumstances of the killing; and where there are no circumstances to prevent or rebut the presumption, the law will presume that the unlawful act was intentional and malicious, and was prompted and determined on by the ordinary and natural operations of the mind. *State* v. *Lautenschlager,* 22 Minn. 514, 526. The law will not, therefore, attempt to lay down a more specific rule. It cannot define the length of time within which the determination to murder or commit the unlawful act resulting in death must be formed. There is great difference in the character of men in respect to habits of thought and action, as well as to self-restraint and sense of moral obligation; and persons who have become depraved through evil habits and associations are generally reckless of restraint, and ripe for crime. Such men will hesitate but little to commit desperate acts, and will act quickly under slight temptation, and from motives which would fail to influence others. We cannot measure the celerity of mental processes;

and whether in a case of homicide a premeditated design to kill was formed, must, where the question can arise at all, be left to the jury to determine from all the circumstances. And we think this question was fairly submitted to the jury in this case.

The defendant's counsel bases his principal assignment of error upon a brief extract from the charge of the court, which taken as a whole presented the law applicable to this branch of the case correctly and intelligently, subject to some criticism for a slight inaccuracy in the use of some words, which, however, could not reasonably have caused any mistake or misapprehension on the part of the jury in the application of the proper rule to the facts disclosed by the evidence. The particular portion of the charge objected to is as follows: "If he debated the question of the killing in his mind for any length of time, even an instant, and as the result of such debate determined the question, and acted upon the determination thus made, he is guilty of murder in the first degree." The court had previously explained and defined what was meant by "premeditation" in the statute, and had fairly submitted the whole question to the jury. The words "in an instant" must be considered in the connection in which they are used,—*noscitur a sociis*,—and the sentence objected to as a whole clearly implies that there must be sufficient time for the operation of those mental processes in which the judgment is to be exercised and the purpose definitely formed. Nothing more is required. All the cases agree that to infer the existence of premeditation does not require the lapse of any precise or definite period of time. In this case also the jury might properly take into consideration the course of conduct of the defendant previous to the homicide, as disclosed by the evidence, in judging of the motives and the condition of mind which led to and prepared him for the commission of such a crime, should the occasion arise.

3. The only other assignment of error which we deem of any importance is that the record does not show affirmatively that the defendant was present at all the proceedings in the court below. It shows that he was present at the arraignment and at the trial, for he testified as a witness, and also when judgment was pronounced. The record here is not, however, complete, nor certified to contain all the

proceedings upon the trial. The case is here to review the errors of the trial court in refusing a new trial. This point was not made in that court. If such error or irregularity had in fact existed, the court would be presumed to take cognizance of it, and, if called to its attention, have caused it to appear of record. And this we deem the correct practice. Error or irregularity in the proceedings in the court below will not be presumed. It should be made affirmatively to appear. See *State* v. *Ryan,* 13 Minn. 343, (378.) The order and judgment are affirmed, and the case remanded to the district court of Clay county for further proceedings.