STATE v. HOMER S. MINOT and Others.

February 7, 1900.

Nos. 11,893—(26).

**Robbery—Tools in Evidence—Judgment.**

Defendants were indicted, with three other persons, of robbery in the first degree, committed by taking $20 from the person of the conductor, after holding up a train and attempting to break the express safe. The state offered in evidence in a body the tools and implements found in possession of defendants at time of arrest. *Held*:

1. Not error, under the circumstances.

2. Not error to receive in evidence said tools and implements, although not used in securing the money from the person, it appearing that such articles might have been employed in the crime attempted upon the express car and safe.

3. Not error to receive expert testimony as to the character and use of said implements.

4. Judgment is justified by the evidence.

Homer S. Minot, Charles F. Hoffman, and James C. Hall, with three other persons, were indicted in the district court for Otter Tail county for robbery in the first degree. The case as against the defendants above named was tried before Searle, J., and a jury, and resulted in verdicts of guilty as charged. From a judgment entered on the verdicts, defendants appealed. Affirmed.

*A. G. Broker* and *Charles C. Houpt*, for appellants.

*W. B. Douglas*, Attorney General, *C. L. Hilton*, County Attorney, and *J. W. Mason*, for respondent.

LEWIS, J.

Defendants Minot, Hoffman, and Hall were indicted for robbery in the first degree, in November, 1898, in connection with three other parties, Link Thayer, Edwards, and Ross. Thayer was tried at the November term of court of Otter Tail county, and convicted as charged in the indictment. As to Edwards and Ross, the record is silent, and the other three were brought to trial at the May term, 1899, resulting in a conviction of all three. Defendants appeal from the judgment entered therein.

The evidence offered by the state tended to prove the following facts: At about eight o'clock, on the evening of November 10, 1898, at a point one mile east of Carlisle station, and about eight miles west from Fergus Falls, the through coast train on the Great Northern Railway was held up by four persons, who were armed and masked. Two of the men had boarded the train at Fergus Falls, and, going onto the engine, had, at the point of guns, caused the engineer to stop the train, and after it was stopped these men, in connection with the other two, who were supposed to be in waiting, attempted to enter the safe in the express car, but failed in this, after delaying the train about one hour. While some of the men were engaged in trying to open the safe, the conductor, George A. Bruce, was relieved of $20, and it was for this particular act that the men were indicted. At about nine o'clock the robbers gave up the task of breaking the safe, and disappeared in the darkness.

It further appeared from the evidence: That on October 27, 1898, Thayer, Minot, Hoffman, and Hall had left Breckenridge, and gone to Clitherall, about fifty miles distant. Thayer returned to Breckenridge on the morning of November 9, the other three going back to Breckenridge on the morning of November 10, arriving there about eight o'clock a. m., and were met at the depot by Thayer. They carried two guns in canvas cases,—one a long, and one a short, case. They placed these guns in a saloon soon after arrival, and the guns were seen at the same place at twelve o'clock, but at one o'clock they were gone. At eleven o'clock next forenoon the guns were found in the saloon again. Thayer was seen at Breckenridge at about 2.30 a. m., November 11, and at 3.10 a. m., the same day, the four men took the train at Wahpeton or Breckenridge, and arrived at Moorhead at about five o'clock a. m., and went to bed at a hotel. At about eight o'clock a. m. they were arrested, in connection with Edwards and Ross, who were in their company. All were searched by the chief of police of Moorhead. Thayer and Minot were found in bed together, and the other two in a different room, at the same hotel. On each man was found a revolver, and on Hoffman were found five drills, four wedges, two

picks, and skeleton tools; also a stick of dynamite and fuse. On Hall were found some explosive caps, and concealed in his coat flap some small saws. From Thayer, while with Minot in the room at the hotel, were taken six drills and two punches.

One witness for the state testified that he had seen Thayer near the scene of the hold-up on November 5, 1898. Messenger McIlrath testified that he was in the express car at the time of the attempt to open it, and that Thayer was the man at work; that his mask fell off, and there was light enough to see. Two other witnesses testified that they had met Thayer and Minot in the road within three or four miles of Carlisle, about five o'clock p. m., November 10. A witness testified to seeing Minot near Carlisle at two o'clock p. m., November 10, and a witness stated that he had seen two men board the train at Fergus Falls, as it passed through, about 7.30 p. m. One was a large, and one a small, man. They were carrying guns in canvas cases,—one short, one long. He had seen one of the same men in the morning of the same day.

The defense attempted to prove an alibi as to each defendant, and also proved that three other suspicious characters were found in a strawstack five miles east from Breckenridge, at ten o'clock a. m., November 11. It appears from the evidence that Breckenridge is about twenty-five miles west of Fergus Falls, and Carlisle about eight miles northwest from Fergus Falls, and about twenty-six miles northeast from Breckenridge. Wahpeton is about one mile west from Breckenridge. There was testimony on the part of the state to the effect that Thayer, the man identified by the messenger, was a large, heavy man, over six feet high; that one of the other men was nearly as large, and one quite small as compared with Thayer, and one medium size; that the men at the time of the robbery designated each other by the numbers 4, 5, 6, and 7. The witness who saw the two men board the train at Fergus Falls testified that he heard the larger of the two say to the smaller, "Be sure of your number, Charlie, 4. I wonder if 7 will make it." The same witness also stated that he identified the larger man as Minot. The messenger testified that the man designated as No. 4 by Thayer in the car was not over five feet nine inches in height, and would weigh probably 170 pounds.

The defense assign as error that the court permitted an unwarranted display of the tools and arms taken from defendants at the time of their arrest. It appears from the record that all the tools and arms above described were placed upon a board, and, being properly marked for identification, were brought into court, and presented to the witnesses causing the arrest to identify them. The collection consisted of the tools taken from the possession of all the six persons found together at Moorhead. The mere fact that they were brought into court in mass, instead of singly, for identification, could hardly be such a display as would prejudice the jury. A trial court should use reasonable care in preventing unusual exhibitions of this character, which might tend to influence a jury, but there is no reason to believe that the occurrence complained of was prejudicial.

A witness on the part of the state was permitted to testify as to the character of the implements found in possession of the defendants. He stated that the files were used, as a general thing, in picking door locks, the drills and punches for opening safes, the ratchet for drilling, and the explosives for the same purpose. The admission of this testimony is assigned as error. The use of such articles in opening locks and safes, and the manner of their application to such purposes, is not of such common knowledge as to preclude expert testimony. The reception of such testimony is within the general rule governing the application of expert testimony in reference to the nature and use of machinery and mechanical appliances.

The court received in evidence, against defendants' objection, all of the articles, without discrimination, found in possession of the six men arrested at Moorhead, and this is assigned as error. One of the objections presented in support of this assignment is that two of the revolvers were taken from Edwards and Ross, who were not on trial, and hence the presentation and receiving in evidence of their revolvers was prejudicial as to the three defendants on trial. Another objection urged is that the specific crime charged against the defendants is robbery, by taking $20 from the person of Bruce, and none of the articles, except the revolvers,

were admissible, because they were not such implements as would tend to show an intent forcibly to take from the person.

Technically, it was error to receive in evidence the two revolvers found upon Edwards and Ross, who were not then on trial. But it is apparent that such error could not have prejudiced the substantial rights of appellants; for the only significance of the revolvers as evidence was for the purpose of showing that appellants and Thayer were armed, when arrested, with the same kind of weapons as were used in holding up the train and robbing the conductor. This fact was shown by the identification and introduction in evidence of the four revolvers found on the defendants and Thayer, respectively, in connection with evidence that the four persons holding up the train were similarly armed. Proof of this fact in no manner depended on the revolvers found on Edwards and Ross, and the mere fact that six revolvers, instead of four, were exhibited in evidence, with proof that only four of them were found upon defendants and Thayer, would have no reasonable tendency to prejudice their rights. With this exception, it was proper to receive in evidence all of the implements mentioned. While the specific crime charged in the indictment was robbery by taking $20 from the person of the conductor, Bruce, yet these tools and revolvers formed one of the links in the chain of circumstances tending to fix the guilt upon defendants. The whole transaction surrounding the hold-up—the attempt to open the car and the safe—formed a part of the res gestæ. The tools and articles found upon the defendants were such as might have been used in accomplishing such purpose as was attempted. The same parties who held up the train, opened the car, and attempted to open the safe, took the money from Bruce.

The defendants also claim that the evidence fails to support the judgment; that, as a matter of law, the evidence is so uncertain as to the identity of the parties that a reasonable doubt arises as to the defendants' guilt. The defendants present the argument thus: The state, by its evidence, placed the three men, Minot, Hoffman, and Hall, in Clitherall prior to November 10. That on the morning of November 10 they went to Breckenridge, and met Thayer, and placed their guns in a saloon, where they still were

seen at twelve o'clock noon.  That Minot could not get from Breck-
enridge to Carlisle in time to be seen by Larson at two o'clock
p. m., and back to Fergus Falls, to catch the train, at 7.30, it ap-
pearing that he traveled on foot.  That the men could not go from
the scene of the hold-up after nine o'clock p. m., and reach Breck-
enridge by 2.30 a. m., November 11.  That the guns were taken
from the saloon at Breckenridge between twelve and one o'clock,
November 10.  That the parties who took them could not have
reached Fergus Falls in time for the train without being seen.
That the evidence as to alibi was so clear and specific to the effect
that they were in Breckenridge and Wahpeton all of the 10th, and
until taking the train in the morning, that the jury must have
ignored it altogether.  That the testimony of identity of defend-
ants by the state's witnesses was too indefinite and uncertain to be
relied upon, and that the presence of three other suspicious char-
acters in the vicinity of Breckenridge on the morning of the 11th,
and in Fergus Falls on the 10th, was sufficient to raise a reason-
able doubt of the guilt of the defendants.

In answer, it is sufficient to say that it was entirely possible for
the defendants to separate and leave Breckenridge at different
times on the 10th, and reach the places fixed by the state, and they
may have traveled in part by team or train.  It was entirely pos-
sible to reach Breckenridge again by 2.30 a. m. on the 11th, leaving
Carlisle at nine p. m. on the 10th.  It would be just as reasonable
for the jury to infer that the three other questionable characters
were co-operating with defendants, though not seen at the robbery,
as to infer that the crime was committed by them alone.

As to identity, the evidence is convincing as to Thayer, and al-
most as strong as to Minot.  Hoffman and Hall were not identi-
fied, except that they corresponded in size to two of the men en-
gaged in the robbery.  The facts that their association and connec-
tion with Minot and Thayer had been close before and after the
robbery; were found in the same places of resort, where crime is
harbored and protected; were equally armed and equipped with
the implements of a felonious occupation, and such as were em-
ployed in the commission of the crime charged,—present such a

chain of circumstances as, unexplained, would justify the jury in finding beyond a reasonable doubt that they participated in the felony. As to the alibi, it was for the jury to say whether any credit should be given to the evidence. While this line of defense is competent, such evidence is generally subject to searching scrutiny. It is easy to prepare for it in advance, and, after reading the record, we are satisfied that the jury would have been justified in rejecting it entirely.

Judgment affirmed.