## JOHN PORSMER v. JAMES C. DAVIS, ETC.

## JOHN PORSMER, AS FATHER v. JAMES C. DAVIS, ETC.[1]

May 19, 1922.

Nos. 22,685, 22,686.

**Excuse of juror not prejudicial to defendant—actual bias.**

1. It was not reversible error for the court to excuse a juror, challenged for actual and implied bias, where the examination of the juror disclosed that he and the attorneys for defendant were in the employ of the same persons and in the course of their duties came frequently

[1]Reported in 188 N. W. 279.

into close contact, there being no claim that an impartial jury was not had.

## Removal of cause to Federal court.

2. The agent of the President was substituted during the trial; as such he represented two railway companies, one of which was a domestic corporation. The latter's train operated upon the tracks of the other railroad company, a foreign corporation, inflicted the injury. Plaintiff's claim of negligence was the condition of a switch-stand, an appliance of the track, and not the manner in which the train was operated. When this appeared during the trial, defendant filed a petition and bond to remove the cause to the Federal court. The court did not err in ignoring the petition.

## Complaint sufficient.

3. The complaint did not charge the injury to have been received while engaged in interstate commerce or because of a violation of the Federal Employers Liability Act, and it was sufficient if the allegations, when established, showed either a violation of a state statute as the proximate cause of the injury or a failure of defendant to exercise ordinary care towards the injured.

## Railway — statute inapplicable to operating appliances.

4. The court erred in permitting the jury to find as ground of recovery that defendant had violated section 4277, G. S. 1913. That section is not designed to remove or regulate appliances necessary to the operation of railroads, such as switch-stands, which must be located upon or in close proximity to railroad tracks.

## Judgment notwithstanding verdict.

5. The defendant was not entitled to judgment non obstante veredicto. Plaintiff may be able to prove a cause of action for negligence in respect to the condition of the switch-stand which occasioned the injury.

## Questions for jury.

6. The defenses of assumption of risk and contributory negligence are for the jury.

Two actions in the district court for St. Louis county, one to recover $10,000 for loss of services of plaintiff's minor son and for medical attendance, etc.; the other to recover $50,000 on behalf of

the minor. The cases were tried together before Magney, J., and a jury which returned a verdict for $4,406 and $30,000, respectively. From orders denying his motions for judgment notwithstanding the verdict or for a new trial, James C. Davis, Director General and Agent of the President under the Transportation Act, appealed. Reversed.

*D. F. Lyons* and *Washburn, Bailey & Mitchell,* for appellant.
*Duxbury & Bissell,* for respondent.

HOLT, J.

On December 26, 1919, Ragnar Porsmer, a messenger boy, 17 years old, in the employ of the director general of railroads, in the Northern Pacific Railway Company's yard office at Duluth, Minnesota, while going through the railroad yards of said company, came under the rear trucks of the last coach of a passenger train of the Duluth, Missabe & Northern Railway Company as it was passing through said yard under the control of said director general. Ragnar lost his feet. The father, John Porsmer, sued the director general and the two railroad companies for the loss of the services of the son, and also, in behalf of the son, for the injuries received. The actions were tried together. There was a verdict in favor of the father for $4,406, and one in favor of the son for $30,000. A motion for judgment notwithstanding the verdicts or a new trial was made. From the order denying the same this appeal is taken.

Upon certain rulings relating to the procedure appellant predicates error. A juror was challenged by plaintiff for actual and implied bias. His examination disclosed that he was assistant manager and appellant's attorneys were the legal advisers of one of the principal mining firms operating in northern Minnesota, and that as such employes their duties brought them into frequent contact. The juror was excused by the court. A motion to re-instate him was denied. After the ruling, one of the attorneys inquired whether the juror was excused for implied bias. The court did not give a direct answer, but stated that he believed it proper to excuse the juror. Implied bias was not shown, but there was justification for sustaining the challenge on the ground of actual bias. Personal

friendship, arising through intimate business association, naturally leads to actual bias; and, when that situation is shown to exist between two persons, the one could not well be an impartial juror in a case where the other takes a leading part. But the rejection of this juror, even if without just cause, does not show that defendant was deprived of an impartial jury, and that is all the law assures a litigant. State v. Kluseman, 53 Minn. 541, 55 N. W. 741. There was no reversible error in the rulings.

When this trial was had the practice as to the retention of the railway companies under governmental control as nominal parties defendant in actions arising during such control had not been authoritatively settled. But it was clear that under the Federal Transportation Act defendant, as agent of the President, should be substituted. During the trial, after it appeared that in the mere operation of the train which ran over Ragnar's feet no negligence appeared, the Duluth, Missabe & Northern Railway Company moved for a dismissal. The motion was denied. But the court did substitute the defendant, the agent of the President, for all of the three defendants. Thereupon the agent of the President, doing business as the Northern Pacific Railway Company, filed a petition and bond for the removal of the cause to the district court of the United States in and for the District of Minnesota. The petition was ignored. We do not think there was reversible error here. The action was brought against the companies nominally and against the director general operating both of them. It was not dismissed as to either railway company, but the agent of the President was substituted, and as such the latter must be held to represent both companies, one of which is a corporation of this state. The petition for removal was based upon the diversity of citizenship. Insofar as this was claimed by the substituted defendant personally, we do not think it stated a valid ground. And, insofar as it was based upon the fact of being a representative of the railroads, he must be held to partake of the citizenship of both the railroads operated by the director general at the time this accident happened, and in which both were concerned, and as representing these there had been no dismissal as to either when the petition for removal was filed. Nor

is it clear that, had this accident occurred when the railroads were not under Federal government control, there could not be liability on the part of Duluth, Missabe & Northern Railway Company, if its trains caused the injury because operated over a track that was negligently constructed. Floody v. Great Northern Ry. Co. 102 Minn. 81, 112 N. W. 875, 1081, 13 L. R. A. (N. S.) 1196.

Error is assigned upon the denial of defendant's motion to require the complaint to allege whether the action was brought under the Federal Employers Liability Act or under the state law. As the case was tried and submitted no prejudice resulted to defendant from the ruling. To be sure, the complaint alleged that the director general and the Northern Pacific Railway Company were engaged in interstate and intrastate commerce and that Ragnar was in their employ in said business, but it is not alleged that he was engaged in interstate commerce when the injury was received, nor that it was caused on account of the violation of any Federal statute by defendant. On the contrary, appellant claims, and respondent seems to concede, the proof conclusive that Ragnar, at the time of the accident, was not in the performance of any duty pertaining to interstate commerce.

It is not required that the complaint allege specifically that a statute upon which recovery is grounded was violated. It is sufficient if facts are pleaded which, if proven, establish that defendant violated a statute designed for the protection of plaintiff, and that such violation was the proximate cause of the injury complained of. We think the facts pleaded authorized the evidence received.

As the case was submitted to the jury recovery was made to depend upon a finding that the switch-stand, which Ragnar claimed to have caused his fall and injury, was so constructed and maintained as to violate the provisions contained in these two sentences from section 4277, G. S. 1913:

"That on and after the passage of this act it shall be unlawful for any such commerce carrier to permit the space between such of its tracks as are ordinarily used by yard men and other employes in the discharge of their duties, to become or remain obstructed by

any foreign obstacle that will interfere with the work of said employes or subject said employes to unnecessary hazard. Such space between or beside such tracks as aforesaid, and between the rails of said tracks must be kept in such condition as to permit said employes to pass over or between said tracks or to use the same by day or night and under all weather conditions, without unnecessary hazard, provided, however, that wherever any railroad company has already begun" depressing the track it shall not apply to the depression.

Plainly a switch-stand, or any of the parts connected with its operation, is not a "foreign obstacle" in a railroad yard, and the maintenance of this stand could not be an offense under the first sentence quoted. We are also of the opinion that the second sentence is not directed against switch-stands, their manner of instalment or regulation. We have a right to expect a penal statute creating a new offense to clearly define and designate the same. The language of the act specifies the space between and beside the tracks as the part to which it relates. Some of this space in a railway yard is necessarily occupied by frogs, switch-stands, switch points, connecting rods and other appliances needed in railroading. If the legislature intended to regulate the design or installation of such instrumentalities, apt language would have been used. We are, therefore, of the opinion that the learned trial court erred in submitting the question of a violation of the statute quoted as ground of recovery.

That this was the only ground submitted as a basis for recovery appears from the fact that neither assumption of risk nor contributory negligence was left to the jury. These defenses were in the case, unless barred by section 4280, G. S. 1913, because of a violation of said section 4277, and the court charged they were barred.

The appellant assigns error on the refusal to grant judgment notwithstanding. Ragnar was employed at the yard office situated a short distance south of four railroad tracks running east and west, and from which leads and sidetracks to industries branched off. A block or so north of the four tracks is Superior street, upon which

street cars run. The street crossing Superior street and the railroad tracks nearest to the yard office is Nineteenth avenue West. On the day in question Ragnar was given a letter and two street car fares, and directed to deliver the letter to a coal office near Thirty-fifth avenue West. Instead of crossing at Nineteenth avenue to the street car, he went east until near Seventeenth avenue, where he crossed over the four tracks, and then started west on a trot. At about this time a passenger train of the Duluth, Missabe & Northern Railway Company, running over the northernly track, or west bound main line of the Northern Pacific Railway Company, was passing him.

He claims that he ran within a foot of the coaches and tripped over this switch-stand in such a manner that his feet were thrown in front of the rear trucks of the last coach. He gives no explanation as to how the feet came thus out of his course, except he says he turned a somersault as he fell, and also ventures the opinion that his foot caught in the iron rod that goes from the switch-stand to the switch which it throws. This rod is 1 3/4 inches in diameter. The stand is about 7 feet north of the north rail. A foot and 8 inches north of the north rail the rod extended about 2/3 of an inch above the upper surface of the head block tie upon which the switch-stand is set; at the distance of 3 feet and 8 inches, about 1 1/2 inches; and at 5 feet and 8 inches away, where the goose neck connects the rod with the switch-stand, it is 2 1/2 inches higher. The surface of this head block tie, on which the switch-stand is located, is about 4 inches above the gravelled roadbed. The rod is on the east side of the head block and is fairly close to it.

The theory of the defense was that Ragnar, knowing that this passenger train always stopped a few rods east of the place of the accident, attempted to board it and get off at a stopping place near his destination and that in such attempt he fell and was injured. No one except Ragnar testified to knowledge of what happened to him. It is extremely difficult to find a reasonable explanation in his story of running alongside the train and tripping on this rod in such a manner that his feet could get in over the rail. However, we have concluded that this was a question for the jury. There is some

suction toward a fast moving train, and there are also rods and projections around which clothing may be caught which may account for the seemingly impossible occurrence.

It is said there should be no recovery because Ragnar had a safe way to go north of the switch-stand where no obstruction existed and the travelling was good. But we think it was for the jury to determine whether he carelessly selected a dangerous when a safe course was open to him.

Neither are we fully persuaded that a case of actionable negligence may not be established without the aid of the statute which the court permitted the jury to apply. It is true, a witness for plaintiff, familiar with railroad operation, testified that he saw nothing wrong with this switch-stand or the rod, and that it was a standard appliance much in use by the Northern Pacific Railway Company. Defendant also had testimony to the same effect. But this phase of the case may not have been fully covered because of the erroneous view of counsel for plaintiff and the trial court that recovery depended upon the applicability of the statute mentioned. We therefore think plaintiff should not be foreclosed from presenting a right of recovery on the proposition whether the master had performed the duty of providing a reasonably safe place for the employes wherein to perform their work. There was some evidence that this rod extended out from the head block farther than necessary and perhaps also higher. In this connection it is also to be noted that in the trial and submission of the issue of negligence, such as just referred to, the proposition of the construction of switch-stands and attachments thereto is an engineering proposition to which due weight must be given, and the jury will be entitled to consider as bearing upon negligence the customary manner of their construction. When negligence is predicated upon violation of a statute, neither engineering propositions nor customary construction avail as evidence in defense. We therefore think the court properly denied judgment.

The conclusion that the court erred in holding section 4277, G. S. 1913, applicable leads to a new trial. Some assignments of error

not discussed are raised, but are not likely to occur at another trial and need not be referred to.

Insofar as the order appealed from denies a new trial it is reversed, and a new trial is granted.