ALICE J. FOSTER v. ADDIE BOCK AND ANOTHER.[1]

November 25, 1949.

No. 35,006.

[1]Reported in 39 N. W. (2d) 862.

*Murphy & Cook* and *Carroll & Thorson,* for appellants.
*Ryan, Ryan, Ryan & Ebert,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendants' motion for judgment *non obstante* or a new trial.

On November 6, 1947, at about 6:30 p. m., plaintiff drove her automobile in the city of Brainerd in a westerly direction upon Norwood street and its intersection with Eighth street. Simultaneously, the automobile of defendant Addie Bock was driven south over Eighth street and into said intersection, where the two vehicles collided. Plaintiff was severely injured. The Bock car was occupied by Addie Bock's 14-year-old son, Ralph (one of the defendants

herein), and his 16-year-old companion, Lloyd Pickar, but the evidence is in conflict as to which one of the two boys was driving.

We are concerned with issues of negligence, contributory negligence, failure of the trial court to give certain instructions governing speed in a municipality, whether the Bock car was operated with the express or implied consent of its owner pursuant to M. S. A. 170.54, and variance between the pleading and proof.

Taking, as we must, the view of the conflicting evidence most favorable to the verdict, the jury could reasonably find that defendants were negligent. The street was wet from falling snow which melted as soon as it touched the ground. Visibility was somewhat impaired. Plaintiff was driving slowly when she reached the intersection. She then looked to her right and saw on Eighth street, about 25 feet from the intersection, a car approaching very slowly from the north; in fact, this car was driving so slowly that it appeared to her at first as if it were parked in the street. Behind this slowly moving car at a distance of about 100 feet from the intersection, she saw the lights of a second car—the Bock car—also approaching from the north. Plaintiff proceeded to cross the intersection and was more than halfway across when she first realized that the Bock car had picked up speed and was bearing down upon her. A disinterested witness who observed the sequence of events leading up to the crash testified that the Bock car passed the vehicle ahead of it and that it was traveling at an "excessive speed for the condition of the weather." Lloyd Pickar said that he was driving the Bock car, that he had picked up a "little speed" before he reached the intersection, and that he "stepped on it a little bit" when he saw plaintiff's car. Ralph Bock also admitted that there had been some increase in speed after plaintiff's car was seen. In the light of the evidence as a whole, the jury could reasonably find that the Bock car was negligently operated and not kept under proper control, and that this negligence was the direct and proximate cause of the collision.

Defendants contend that plaintiff was contributorily negligent as a matter of law, and in support of this contention they cite Moore

v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007. The Kujath decision is not in point. In that case, the parties, on a clear day, when visibility was excellent, approached an intersection at *approximately the same time*. The defendant—who had recovered a verdict on his counterclaim—was by this court held guilty of contributory negligence as a matter of law, in that he failed, although there were no intervening obstacles or distracting circumstances, to see plaintiff's car to his right, which was then in plain sight. In the instant case, we have an entirely different situation, in that the jury could reasonably find that plaintiff reached the intersection an *appreciable* time before the Bock car. In fact, although plaintiff was driving very slowly, she had time to cross at least half of the intersection before the crash occurred. Furthermore, plaintiff not only entered the intersection an appreciable time ahead of the Bock car, but she also actually observed the Bock vehicle when it was 100 feet north of the intersection. We do not here have the situation contemplated by § 169.20, subd. 1, which provides: "When two vehicles enter an intersection from different highways *at approximately the same time* the driver of the vehicle on the left shall yield the right of way to the vehicle on the right." (Italics supplied.) The issue of contributory negligence was for the jury. It is only where the evidence of contributory negligence is so clear as to preclude an honest difference of opinion among reasonable men that the court may enter upon the province of the jury and direct a verdict for defendant.[2]

■ Defendants also predicate error upon the trial court's failure to instruct the jury that where no special hazards exist a speed of 30 miles per hour in any municipality is lawful. § 169.14, subd. 2. Defendants did not at any time request such an instruction to be given. When the trial court asked both counsel whether they desired any additions to, or corrections of, the charge given to the jury, defendants said nothing with respect to said omission. In no manner whatever was the inadvertent omission at any time called

[2]Hagerty v. Radle, 228 Minn. 487, 37 N. W. (2d) 819; 4 Dunnell, Dig. & Supp. §§ 7033, 7048.

to the attention of the court. Although a formal exception need not be taken to an inadvertent omission or error in a trial court's instruction to the jury, such omission or error is no ground for granting a new trial unless the trial court's attention has been seasonably directed thereto in some manner.[3]

■ Defendants assert that plaintiff has not sustained the burden of proof on the issue of express or implied consent under § 170.54. We are not concerned with the prima facie case that arises for a plaintiff from the mere proof of ownership. See, Ballman v. Brinker, 211 Minn. 322, 324, 1 N. W. (2d) 365, 366. Such prima facie case disappears and is of no aid the moment evidence negativing consent is presented. Here, there was a sharp evidentiary conflict. On the day of the accident, a daughter of the car-owning defendant had possession of the car for going to and from her employment at the telephone exchange. Her afternoon employment hours were between 5:30 and 9:30 p. m. Upon reporting for work at 5:30 p. m., she parked the automobile on a street near the telephone building. This daughter regularly had one car key, another was used by Addie Bock and her husband, and a third key was kept in a kitchen cupboard. Ralph Bock testified that without the knowledge or consent of his mother he had taken the kitchen cupboard key, and, without his sister's knowledge, had possessed himself of the automobile where parked near the telephone building. Addie Bock, not only denied that she had given Ralph consent to use the car, but also insisted that she had expressly forbidden such use. Defendants presented other evidence to negative the existence of consent. The jury, however, was not bound by the testimony of defendants, because there was other substantial evidence to the contrary. The sheriff testified that several months after the accident, when he had occasion to interview Addie Bock concerning another matter, she had said, in discussing certain family difficulties, that her husband—

---

[3]For amplification, see Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912.

"throwed it up to her different times, was mad at her because she gave Ralph permission to *use* the car the night Ralph and the Pickar boy had the accident." (Italics supplied.)

The sheriff's testimony was corroborated by his deputy. We are not impressed with defendants' efforts to construe Mrs. Bock's statement to the sheriff as being nothing more than a declaration that her husband *merely claimed* she had given Ralph permission to use the car. Taking the testimony of the sheriff and his deputy as a whole, the jury could reasonably and properly accept Addie Bock's statement as an unqualified admission that she had given Ralph her consent to *use* the car.

A more difficult question on the issue of consent arises by reason of the trial court's charge that, if the jury found that defendant Ralph Bock had the car with the express or implied consent of the owner, such owner would be liable to plaintiff for damages for the negligent operation of the automobile, even though the car was actually driven by Lloyd Pickar. Was this charge erroneous? Obviously, we cannot know whether the jury based its verdict on a finding of a driving of the car by Ralph or by Pickar. In considering the correctness of the charge, we must therefore assume that it was driven by Pickar.

Is a car owner (pursuant to § 170.54) who has given his bailee possession of, and consent to operate, his automobile upon a public highway, liable in damages for the negligent operation of the car when such bailee remains in the vehicle but permits a third person to do the actual driving? In answering this question, we are not concerned with a situation where the bailee has completely relinquished possession and control of the car to another. See, 21 Minn. L. Rev. 823, 832, and cases cited under footnote 42. In determining the issue, we must ascertain the scope of the consent given by Addie Bock to her 14-year-old son. He was given "permission to *use* the car." (Italics supplied.) The word "use" is a term which, in the absence of qualifying words or circumstances, involves a broad consent as to the manner in which a car is to be operated on the highway. A bailee, who without limitation is given the *use* of a car, is

for the time given possession and control of the vehicle for a designated purpose without restriction as to whether it shall be driven by him personally or by another under his supervision. Hardware Mut. Cas. Co. v. Mitnick, 180 Md. 604, 26 A. (2d) 393. In the instant case, there were no terms of qualification or limitation. What is more, the surrounding circumstances could well justify an inference by the jury that the consent given was unrestricted and encompassed the right of the bailee to permit driving by another. In the first place, the bailee was a 14-year-old boy, who was without a driver's license and could not possibly qualify for one until he attained the age of 15 years. § 171.04(1). Legally speaking, he was crippled and could not drive. The jury could infer that the mother did not intend that he should violate the law by driving himself, but that he should leave the actual driving to some companion who had a license. In the second place, the consent to use the car was obviously for the boy's pleasure that evening. As a parent of ordinary intelligence, the mother knew that any boy of that age finds his pleasure in the company of other youngsters, and that, if not expressly restrained, such youngsters are likely to share the driving of the vehicle with each other.

Is a consent given to a bailee, although it contains no restriction upon the actual driving of the car, qualified by the very terms of § 170.54 so as to absolve the owner from liability and negligence where the bailee, who remains in possession and control of the car, permits the actual driving to be done by another? Section 170.54[4] reads:

"Whenever any motor vehicle, after Laws 1945, Chapter 285, becomes effective, *shall be operated upon any public street or highway* of this state, by any person other than the owner, *with the consent of the owner, express or implied,* the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof." (Italics supplied.)

In construing this section, we quote with approval the language used by the supreme court of Michigan in interpreting a similar

[4] L. 1945, c. 285, § 34.

statute. In Kerns v. Lewis, 246 Mich. 423, 425, 224 N. W. 647, 648, the court said:

"* * * Does the essential consent mentioned in the statute relate to the *driver*, or to the vehicle 'being driven'? The statute makes the owner liable if the 'motor vehicle is being driven with his or her express or implied consent or knowledge,' and we cannot read into it the restriction that the particular driver must be known by and his driving consented to by the owner. The statute may be drastic, but we cannot render it less so by any permissible construction."

Any other construction would be unjustifiably narrow and would partially defeat the obvious purpose of the owner's statutory liability act, namely, the protection of the public. A similar result has been reached by other leading jurisdictions. See, 21 Minn. L. Rev. 823, 831, 832; Annotation, 147 A. L. R. 875. The charge of the trial court, under the circumstances, was correct. Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744, is not in point. In that case, the scope of the owner's consent was exceeded by (1) a use of the car for a purpose entirely foreign to that for which it had been entrusted to the bailee, and (2) by the further fact that the bailee had completely relinquished possession and control of the vehicle to another. Kayser v. Jungbauer, 217 Minn. 140, 14 N. W. (2d) 337, is clearly distinguishable, in that the car was there driven by a mere interloper without the permission of the bailee and during his absence.

■ A fatal variance between the allegations of the complaint and the proof is urged by defendants. We do not so find. The complaint alleged that the Bock car was driven by Ralph Bock and not by Lloyd Pickar. At the close of the evidence, defendants made a motion for an order requiring plaintiff to elect as the basis for her recovery which of the two boys was the actual driver. The motion was denied, and we find no abuse of discretion. An examination of the record discloses that defendants were not misled or prejudiced by the variance. Where, as here, all facts relating to the issue on which a variance between pleading and proof is claimed are within

the knowledge of defendants and have been fully litigated, the variance is not fatal. See, Tiedje v. Haney, 184 Minn. 569, 239 N. W. 611; 1 Pirsig's Dunnell, Minn. Pl. § 33; 5 Dunnell, Dig. & Supp. § 7672.

The order of the trial court is affirmed.

Affirmed.