# STATE v. HARRY WILSON.[1]

February 27, 1953.

No. 35,741.

See, 235 Minn. 571, 50 N. W. (2d) 706.

*Roy K. Redetzke* and *G. L. Dosland,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Vance N. Thysell,* County Attorney, for the State.

KNUTSON, JUSTICE.

Defendant was convicted of the crime of rape. He appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

The complaining witness is a young girl, 17 years of age at the time of trial, who, up to August 10, 1951, had lived with her mother and grandparents on a farm near Barnesville. On that date she went to Moorhead and obtained employment as a waitress in a restaurant known as the Gopher Grill. On August 20, 1951, she

[1]Reported in 57 N. W. (2d) 412.

worked from noon until 2 p. m. and again from 5:30 until midnight. When she had finished working she changed her clothes and started walking on Center avenue, which is the main street in Moorhead, intending to go to the place where she roomed. When she had walked about two blocks, an automobile stopped near her at the intersection of Center avenue and Seventh street. The man in the car asked her if she wanted a ride home. She at first declined but later, stating that she was tired, accepted the offer and entered the car. She told the driver where she lived, and he proceeded to that destination but, instead of stopping, kept on driving. She testified that he drove south until he hit highway No. 52 and that while driving he had hold of her wrist and pulled her toward him. He drove onto a side road near a night club seven miles south and east of Moorhead, and her testimony is that he parked his car and, after pushing her down in the seat, committed the act complained of. She said that she struggled as much as she could and tried to push him away and that when she screamed he threatened to kill her if she did not "shut up." She said that after some time he let up and she opened the door and "scooted out." She ran down the road for some distance and then cut across a field. She observed a large house about a quarter of a mile away and, after running through a beet field, knocked on the door of the big house but was unable to get any response. She then saw a smaller house nearby and went there and aroused the residents who are named Nitzkorski. Mr. and Mrs. Nitzkorski, together with their small child, took complaining witness to her mother's home near Barnesville. They arrived there about 1 a. m. She and her mother told her boy friend, who was rooming there, what had happened, and he took her to Moorhead, where she obtained some of her clothing from the room where she had been staying, and then they returned home. The next morning the mother took her to see Dr. G. Wilson Hunter at Fargo, where she was examined. He found evidence of blood on parts of her body, indications of lacerations, tearing, and bleeding, and other evidence of force, from which he formed the opinion that the injuries resulted from involuntary sexual intercourse. After being

examined by the doctor, she and her mother talked to the county attorney, and the mother signed a complaint.

The complaining witness identified the automobile in which she was riding as a Buick convertible having a black top. She described the man who had committed the act as having thick lips, curly hair, quite a round face, and large eyes and weighing about 180 pounds. On direct examination, she said that he was wearing "sort of a jacket" and light tan trousers. She said that he was wearing a tie. On cross-examination, she stated that she could not say definitely whether he was wearing a jacket or a suit coat.

Defendant is a young man, 22 years of age at the time of trial. He is married and lives with his wife in Fargo, North Dakota, where he is employed by Russ Buick Company as assistant service manager. On the evening in question he worked until 6:15 or 6:30. He then went home for supper, and his testimony, and that of his wife, is that he stayed home until about 7:30. He then asked his wife if it would be all right if he went to his place of work, and she said that it would be if he were back by 11 o'clock. He said that he went to his place of employment and later left there with one Howard Kraglund and thereafter they played shuffleboard together at several taverns. About 11:10 p. m. they were joined by a friend of defendant's family, Mrs. Beverly Ames, who had been to a show. Defendant offered to take her home, and his testimony, as well as hers, is that they arrived at her home about 11:30, after which defendant went directly to his home, arriving there about 11:40. He and his wife both testified that he stayed home the balance of the night. In regard to defendant's testimony with reference to his activities until he left the Ames home, he is corroborated by those with whom he spent the evening. Defendant and his wife further testified that he was wearing an old leather jacket and the clothes he customarily wore to work. They testified also that he was not wearing a necktie. Howard Kraglund identified a leather jacket introduced in evidence as the one worn by defendant while they were together, as did defendant's wife.

There are other facts and details which could be mentioned, but the above is sufficient to present the issues involved in this appeal.

Complaining witness was given an opportunity to observe people who owned automobiles such as the one she had described. She eliminated three such suspects, and on September 11 defendant was brought to the Clay county jail. After observing him through a peephole in the wall for some seven minutes, she positively identified him as her assailant. He was thereafter arrested and brought to trial.

■ While defendant assigns a number of errors, we believe those relating to certain instructions of the court, hereinafter mentioned, are decisive of this appeal. The evidence amply establishes the commission of the crime. As may be seen from the above, the conviction must stand or fall on the identification of defendant by the complaining witness. On the other hand, defendant depends entirely upon an alibi for a defense. Were it not for the errors hereinafter discussed, we would be compelled to say that the identification by complaining witness would have to stand. She had a better opportunity to observe defendant during their ride together than is usual in these cases. She also testified that she had seen defendant "a couple of times" in the Gopher Grill on prior occasions. She stated that on one occasion she had given him a check and that then another girl, who had charge of the booth in which he was sitting, took over. The other girl was not called as a witness nor was anyone else in the Gopher Grill, in spite of the fact that defendant denied having been in this restaurant during the time that the complaining witness worked there. The jury, however, could believe that she had sufficient opportunity to observe defendant so that she was able to identify him.

■ Defendant assigns as error several statements of the court in its instructions to the jury. We need consider only two. The first of these relates to defendant's defense of alibi. With respect to this defense, the court charged the jury:

"The defense in this case is what we call an alibi. In other words, the defendant alleges that he could not be guilty of this offense be-

cause he was not present at the time in question. If he was not there at the time and place in question he could not commit the act, so an alibi has been offered as a defense in this case. The defense is easily claimed and hard to disprove. It is for you to determine what weight is to be given to that evidence, and you will consider all of the evidence with caution and subject it to rigid scrutiny. That rule applies to all of the evidence in the case. If the evidence with reference to an alibi raises a reasonable doubt in your minds as to the guilt of the defendant, then your verdict will be not guilty, the defendant being entitled to the benefit of any reasonable doubt. If you find such evidence entitled to no weight or credit, then you will, of course, treat it accordingly."

The authorities are irreconcilably divided on the question of whether an instruction which tends to disparage or belittle a defense of alibi is or is not reversible error. The weight of authority appears to be that any instruction which tends to belittle or disparage a defense of an alibi is reversible error. No good purpose could be served by attempting to distinguish or reconcile the many cases on this subject. The cases are collected in Annotations, 14 A. L. R. 1426, 67 A. L. R. 122, and 146 A. L. R. 1377. See, also, 53 Am. Jur., Trial, § 655. There is a respectable minority of cases holding that all cautionary instructions regarding an alibi are not reversible error. Among these is our case of State v. Duddy, 152 Minn. 179, 181, 188 N. W. 261, 262, where the court instructed the jury with respect to an alibi that—

"* * * it will be remembered always that an alibi is a defense that is easily fabricated and hard to disprove; but if it is proved, it is a good defense. I say that merely to caution the jury to consider the evidence on both sides * * * and weigh it carefully."

With respect to the instruction, we said (152 Minn. 181, 188 N. W. 262):

"* * * We find no reversible error in this instruction. In point of substance what the court said about the defense is supported by the remark found in the opinion in State v. Minot, 79 Minn. 118,

81 N. W. 753. It did not have the effect of casting upon defendant the burden of establishing the alibi as a defense, nor in any proper view of impairing or negativing the general presumption of innocence. The court was quite clear in placing the burden of proof on the state, and instructed the jury that no verdict of guilty could be returned except they found from all the evidence beyond a reasonable doubt that defendant was a party to the commission of the crime. While the remark might well enough have been omitted from the charge, it is clear that the jury was not misled or confused thereby."

In State v. Minot, 79 Minn. 118, 124, 81 N. W. 753, 756, referred to in the Duddy case, in considering the evidence relating to alibi we said:

"* * * As to the alibi, it was for the jury to say whether any credit should be given to the evidence. While this line of defense is competent, such evidence is generally subject to searching scrutiny. It is easy to prepare for it in advance, and, after reading the record, we are satisfied that the jury would have been justified in rejecting it entirely."

What we said in that case had nothing to do with the trial court's instruction; we were simply referring to an examination of the evidence on appeal. The two cases illustrate the danger of using as instructions to a jury statements from opinions of this court which were made regarding the sufficiency of evidence to sustain a finding of court or jury.

While it may not be necessary to lay down an ironclad rule that any cautionary instruction regarding evidence tending to prove an alibi is always reversible error, such instruction, if given at all, must be given with extreme care to the end that evidence tending to prove an alibi is given proper consideration by the jury. Such defense, if proved, is as valid as any other defense. In many cases it is the only defense available to a defendant. It is particularly true that great care must be exercised in giving such instruction where a crime is involved which is naturally so revolting by its very

nature that it is easy for the jury to become prejudiced. However, were it not for other instructions given to the jury in this case, we would be inclined to hold, along with State v. Duddy, 152 Minn. 179, 188 N. W. 261, *supra,* that the instruction regarding alibi, standing alone, would not justify a reversal.

■ Following the above instruction and as the final charge on the law given by the court to the jury, the court said:

"In considering the evidence in this case you will consider what evidence corroborates other evidence, and you may ask what corroboration there is of the testimony of * * * [the complaining witness] that she was raped. You will ask yourselves what evidence there is by way of corroboration of defendant's alibi. You will have in mind, of course, that neither defendant's parents, Mr. Kraglund nor Mrs. Ames professed to know anything about the whereabouts of defendant after midnight of the day in question. *That brings you to the question of whether Mrs. Wilson, the defendant's wife, was mistaken or whether * * * [the complaining witness] was wrong."* (Italics supplied.)

While we have said many times that the instructions of the court must be read as a whole, it is obvious that as a parting instruction the above statement might well lead the jury to believe that the whole case hinged on accepting either the testimony of defendant's wife or that of the complaining witness. Balanced against the testimony of the complaining witness, there was the testimony of several witnesses. Defendant, having taken the stand himself, was entitled to have his testimony considered the same as any other witness. The instruction ignores the testimony of people with whom defendant spent the evening particularly respecting the clothes he wore. The jury was not permitted to disregard the testimony of defendant or of any of his witnesses where such testimony was in conflict with that of the complaining witness. The jury might well have concluded that Mrs. Wilson was mistaken about the time of defendant's return, but it would still be required to consider whether discrepancies between the testimony of other witnesses, including that of

defendant himself, and the testimony of the complaining witness were sufficient to raise a reasonable doubt as to his guilt. We believe that the instruction was prejudicial and might well have misled the jury. There must be a new trial accordingly.

We cannot agree that the statement of the court was an inadvertent error or omission. In no sense can it be called an omission. To the contrary, it was a definite statement, which we believe was fundamental. Neither can it be said to have been inadvertent. The court commented quite freely on the evidence—probably more freely than would have been necessary. While the trial court may comment fairly on the evidence, if he does so, care must be exercised to see that all credible evidence is given fair treatment. It seems to us that, after summing up the evidence, the court stated a positive instruction that the jury should base its decision on the determination of which of the two witnesses they believed. We believe that the court was in error in so doing, in that it may well have led the jury to disregard other evidence which they should have considered. This was not an error at all in the sense that the court misspoke itself. It was a fundamental error in the sense that the trial court was mistaken as to what it conceived the evidence to be upon which the verdict should be based.

Our rule is now embodied in Rule 51 of the Rules of Civil Procedure. While these rules do not apply to criminal trials and this case was tried prior to the effective date of the new rules, Rule 51 states the law as it existed prior to its adoption. See, 2 Youngquist & Blacik, Minnesota Rules Practice, 555. Rule 51 of the Rules of Civil Procedure, as far as here material, reads:

"* * * No party may assign as error unintentional misstatements and verbal errors, or omissions in the charge, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court."

The statement to which we have reference, as has been pointed out, was neither an unintentional misstatement, a verbal error, or an omission. Rather, it was an error on the controlling principle, hence such error as could be assigned on a motion for a new trial. We have no way of determining from the cold record what tone of voice the court used. We can only review the statement as it appears in the record.

In the note attached to the order denying defendant's motion, the court said:

"The closing argument of defense counsel in this matter was improper, although not objected to by counsel for the state, and it together with the issues in the case made it necessary that the jury be instructed in manner shown of record."

We have no way of knowing to what statements of defendant's counsel the trial court alludes. The entire argument of both counsel is in the record, and it appears that whenever counsel for the state objected to statements made by defendant's counsel the court took care of the matter. Be that as it may, no statement of counsel in their argument to the jury can justify an instruction which will deprive a defendant of the protection afforded him by the presumption of innocence and the burden resting upon the state of proving guilt beyond a reasonable doubt. If improper argument is made to the jury, it is permissible and proper for the court to instruct the jury thereon, but we cannot construe the objectionable instructions in this case as relating to anything said by defendant's counsel.

Reversed and new trial granted.

LORING, CHIEF JUSTICE (dissenting).

I find myself unable to agree to a reversal because of the error in the charge quoted in the majority opinion. It strikes me that the last sentence quoted should be construed in the light of the previous sentences in which the court said:

"In considering the evidence in this case you will consider what evidence corroborates other evidence, and you may ask what corroboration there is of the testimony of * * * [complaining wit-

ness] that she was raped. You will ask yourselves what evidence there is by way of corroboration of defendant's alibi."

It was in the light of these suggestions that the last sentence, on which the reversal hinges, was given as follows:

"* * * That brings you to the question of whether Mrs. Wilson, the defendant's wife, was mistaken or whether * * * [the complaining witness] was wrong."

The whole charge should be construed together, and, if so construed it is not prejudicial to defendant, there should not be a reversal for error. State v. Murphy, 181 Minn. 303, 232 N. W. 335, 71 A. L. R. 66; State v. Zempel, 103 Minn. 428, 115 N. W. 275 (rape); State v. Newman, 93 Minn. 393, 101 N. W. 499 (statutory rape). Where the charge, as a whole, clearly submitted all the evidence to the jury for determination, there should not be a reversal. State v. Winberg, 196 Minn. 135, 264 N. W. 578. In the case at bar, the court in its charge carefully submitted to the jury all the questions of fact for determination. After the statement complained of by the majority and in its final submission, the court said:

"You will now take this case and put aside all sympathy or prejudice and determine where the truth lies. Is the defendant guilty as charged in the information or is he innocent? Remembering all of the rules of law I have endeavored to discuss with you, you will return a verdict which is just and fair according to the evidence and the law."

At the close of the charge, defendant excepted to the charge in the following language:

"Mr. Dosland: The defendant excepts to the instructions as given to the jury and particularly to the comment on the complaining witness' ability to see the face of the man who attacked her; and further on the comment that the defense of an alibi is easy to present and difficult to disprove and further upon the fact that * * * [complaining witness] made a complaint. The defendant

further excepts to the various comments upon the evidence in the case.

"The Court: Of course, the last doesn't mean anything.

"Mr. Thysell: No. It is very general.

"The Court: The rest of the exceptions have no merit.

"Mr. Dosland: We also take exception to the statement of the Court that the defense of alibi should be scrutinized with extreme care.

"The Court: The supreme court has held that in several cases in this state.

"Mr. Dosland: I believe that is true, your Honor. I believe I have checked it heretofore."

How little merit there was in these exceptions is illustrated by what the court charged about identification by the complaining witness. It said:

"What opportunity did * * * [the complaining witness] have to observe the face of the man who drove the car in question? What occasion did she have to remember that face? What was her conduct and method of identification in the jail? You have heard her testimony and the testimony of the sheriff, Mr. Curran, in that respect, and you will remember that you are to be governed by the actual evidence and not by any inadvertent statements as to what the evidence is unless such statements are borne out by the actual. evidence in the case."

No exception was taken or challenge made to the correctness of that part of the charge upon which the majority hinges the reversal until the motion for new trial, and that does not raise the question of error as to any fundamental question of law. The charge merely submitted to the jury the question of which of two diametrically opposed witnesses was in error. The issue in the case had simmered down to the testimony in support of identification against that in support of an alibi.

As to alibi, the court in its charge included a statement as to the rigid scrutiny to be applied to all the evidence in the case. It said:

458

"* * * The defense [of alibi] is easily claimed and hard to disprove. It is for you to determine what weight is to be given to that evidence, and you will *consider all of the evidence with caution and subject it to rigid scrutiny. That rule applies to all of the evidence in the case.* If the evidence with reference to an alibi raises a reasonable doubt in your minds as to the guilt of the defendant, then your verdict will be not guilty, the defendant being entitled to the benefit of any reasonable doubt. If you find such evidence entitled to no weight or credit, then you will, of course, treat it accordingly." (Italics supplied.)

Taking the charge as a whole, it appears to be a fair and impartial submission of the issues. State v. Brown, 41 Minn. 319, 43 N. W. 69.

I think there should be an affirmance.

CHRISTIANSON, JUSTICE (dissenting).

It seems to me that the instruction upon which the majority relies in granting a new trial could have been misleading to the jury if they took it to be a concise summing up of the issues they were to decide. Obviously it was incomplete and insufficient for that purpose. Whether it could reasonably have been interpreted by the jury to be such a summing up would depend upon the manner in which it was given and the emphasis placed upon it by the trial court. Neither of these matters, in my opinion, can be determined from the bare words upon the cold record before us.

The failure of defendant's experienced counsel to object to this part of the trial court's instructions at the conclusion of the charge indicates to me that it was not given in a manner which made it likely to mislead the jury. Defendant's counsel were alert to note statements in the charge which they found objectionable, and they took exception to certain parts of the charge before the jury retired. They did not, however, call the court's attention to any error in respect to the instruction in question until the motion for a new trial.

Errors in jury instructions as to controlling propositions of law may be called to the attention of the trial court for the first time in

a notice of motion for a new trial, but inadvertent errors or omissions must be called to the court's attention before the jury has retired. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221. M. S. A. 547.03, subd. 2, was not intended to obviate the necessity of seasonably calling the court's attention to inadvertent omissions or errors in the charge but merely to eliminate the need for taking an exception where the court has acted adversely after its attention has been directed to the alleged error. Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912; Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862; Chapman v. Dorsey, 235 Minn. 25, 49 N. W. (2d) 4. The rule of Steinbauer v. Stone, *supra,* still stands. MacIllravie v. St. Barnabas Hospital, *supra.* It is applicable to criminal as well as civil cases. State v. Kaufman, 172 Minn. 139, 214 N. W. 785; State v. Farmer, 179 Minn. 516, 229 N. W. 789; 5 Dunnell, Dig. (3 ed.) § 2479a.

If the trial court's emphasis or manner of giving that part of the charge complained of was misleading to the jury, it is precisely the type of inadvertent error to which the foregoing rule is applicable because, had it been seasonably called to the court's attention, it undoubtedly would have been corrected before the jury retired.

For these reasons I respectfully dissent.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.