# LAWRENCE W. LANGE AND OTHERS v. CALVIN POTTER.

## 132 N. W. (2d) 734.

January 22, 1965—No. 39,356.

*Feinberg, Mirviss, Meyers, Schumacher & Malmon,* for appellants.
*Rider, Bennett, Egan & Johnson,* for respondent.

Otis, Justice.

Plaintiffs seek to recover damages for personal injuries resulting from a collision between an automobile which they occupied and one owned by defendant, Calvin Potter, operated by a Jeffrey Jenson. This appeal stems from a special verdict determining that defendant's vehicle was not being driven with his implied consent at the time of the accident.

On the evening of November 9, 1962, defendant's daughter, Carolyn, was given permission by her father to use the family car to celebrate her 17th birthday. She had her own key but routinely secured consent

to drive each Friday evening to a roller skating rink. Although defendant did not expressly restrict the use of the car on the night in question, he had on many occasions admonished her against permitting anyone else to drive. He was not aware until after this accident that she had occasionally disobeyed him. On the night in question, Carolyn left her home in New Brighton between 7 and 8 o'clock without disclosing her destination or the persons she intended to meet. In the next two or three hours she picked up three girls her own age and four boys ranging in ages from 15 to 17. She testified that after she met Jeffrey Jenson, over her protests he insisted on driving. However, since it was her birthday and she wasn't disposed to engage in an argument, she capitulated, and Jeffrey thereafter drove until the time of the accident. The four couples proceeded to Wyoming, Minnesota, where they had little apparent difficulty in purchasing and consuming in various parking areas two cases of beer. Thus fortified, Jeffrey collided with the plaintiffs in the intersection of Highway No. 8 and County Road No. 14 in Anoka County at about 10:15 p. m. Following the accident, the four boys disappeared on foot, leaving the young ladies to cope as best they could with the injured plaintiffs and the police.

The only issue is whether or not Jenson was driving with the consent of defendant Potter, within the meaning of Minn. St. 170.54.

Plaintiffs requested an instruction that a car owner who has given his bailee possession of his automobile and consent to operate it is liable for the negligence of a third person who does the actual driving if the bailee has remained in the vehicle. The charge actually given by the court, to which plaintiffs excepted, is as follows:

"* * * [I]f you find that Calvin Potter in consenting to Carolyn's use of the automobile, restricted the use thereof to her personal driving and prohibiting the driving of the Buick by anyone else when in her possession on that evening by a previous established and continuing rule of prohibition against anyone else driving the car while in her possession, then you must find that Jeffrey Jenson did not have the implied consent of Calvin Potter."

The jury gave this answer to the interrogatory which was submitted to it:

"Was Jeffry Jenson, at the time of the accident, driving the Buick automobile with the implied consent of its owner, defendant Calvin Potter?

"Answer Yes or No: No"

The vicarious liability act (Minn. St. 170.54) provides as follows:

"Whenever any motor vehicle, after Laws 1945, Chapter 285, becomes effective, shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

We are of the opinion that as a matter of law the jury's interrogatory should have been answered in the affirmative.

Two early decisions of this court, rendered before the adoption of either the family car doctrine or the vicarious liability act, established a principle on which later cases in New York and California were specifically decided. In Geiss v. Twin City Taxicab Co. 120 Minn. 368, 371, 139 N. W. 611, 612, 45 L. R. A. (N.S.) 382, we held that a master was liable for the negligence of a third person who was driving his automobile under the direction or with the acquiescence of the owner's servant, then a passenger in the car. "[T]he act of the stranger is substantially the act of the servant; the stranger being considered an instrumentality in the hands of the servant." A similar result was reached in Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N.S.) 970. There a 19-year-old daughter permitted a cousin to drive her father's car. The father was held liable for an accident which resulted. The court reasoned that while the daughter remained in the car she retained control of its operation, which was in furtherance of the purpose for which she had received it.

The Geiss and Kayser cases were subsequently cited as authority in a New York case, Grant v. Knepper, 245 N. Y. 158, 156 N. E. 650, 54 A. L. R. 845, wherein Mr. Chief Justice Cardozo made the following observation (245 N. Y. 165, 156 N. E. 652):

"* * * Only a narrow construction would permit us now to say

that an owner placing a car in the care of members of his family to be used for their pleasure or for the family business would escape liability if wife or son or daughter should give over the wheel to the management of a friend."

While in none of these cases did the owner expressly admonish against permitting a third person to drive, that issue ultimately arose in Arcara v. Moresse, 258 N. Y. 211, 179 N. E. 389. The New York statute imposed liability on the owner for negligence in the operation of a motor vehicle by any person legally "using or operating" it with his express or implied permission. The court held that as long as the bailee was in the car it was being used with the owner's permission. In arriving at its conclusion, however, the court used the following language (258 N. Y. 215, 179 N. E. 390):

"* * * The clear implication is that, if the legal user at the time be present in the car, still 'the director of the enterprise,' still 'the master of the ship,' the operation of the car is his operation, though the hands at the wheel are those of a substitute, and the negligent driving will bind the owner, with whose permission the car is used. That such is the meaning of the statute is indicated by the opinion in Grant v. Knepper (*supra*), when it was said: 'We think the effect of the statute is to read into our law the rule of liability laid down in Geiss v. Twin City Taxicab Co. (120 Minn. 368)' (p. 165)."

The California Court of Appeals relied on the Grant case in concluding that a father's admonition that he would rather his son would not let any other person drive the car did not prevent the car's being operated with the owner's consent, within the meaning of the statute, when driven by a stranger. Haggard v. Frick, 6 Cal. App. (2d) 392, 44 P. (2d) 447. The court there construed a statute similar to that of New York and adopted the rule that if the owner entrusts his car to another he invests him with the same authority to select an operator which the owner had in the first instance.[1]

---

[1]More recently the problem was exhaustively considered by the California Supreme Court in Souza v. Corti, 22 Cal. (2d) 454, 139 P. (2d) 645, 147 A. L. R. 861, annotated at 875. See, also, State Farm Mutual Auto

Two opinions worthy of comment have been rendered under a family purpose doctrine and a dangerous instrumentality principle in states having no vicarious liability statute. In King v. Cann, 184 Wash. 554, 52 P. (2d) 900, the car was driven by a friend of the owner's son in violation of the father's specific instructions. In finding implied consent, the court stated (184 Wash. 559, 52 P. [2d] 902):

"When a member of the family has permission to use the car from the parents, as owners, in so unrestricted a manner as in the instant case, they must be held liable under the principle of agency, or *respondeat superior,* even though the member of the family turned the driving of the car over to another who proved incompetent or negligent. In so doing, the substitute was a mere instrument or agent—a longer arm which the servant or agent wields or controls."

The Florida court dealt with a bailment contract which expressly prohibited the operation of the automobile by anyone other than the bailee. Susco Car Rental System v. Leonard (Fla.) 112 So. (2d) 832. The court held that under that state's dangerous instrumentality doctrine and the prevailing rationale of its cases, when control of a vehicle is voluntarily relinquished by the owner, something approaching a conversion or theft is necessary to relieve him of liability. The only consent the court found necessary was consent to the use or operation of the instrumentality beyond the owner's immediate control.

Reverting to our own decisions, each party cites as controlling in his favor Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862. There, a parent was held liable for the unauthorized operation of her car by a friend of her 14-year-old son who was himself ineligible for a license by reason of his age. In sustaining the jury's finding that the use of the car was with the parent's implied consent, we said (229 Minn. 433, 39 N. W. [2d] 866):

"* * * A bailee, who without limitation is given the *use* of a car, is for the time given possession and control of the vehicle for a designated purpose without restriction as to whether it shall be driven by

Ins. Co. v. Porter (9 Cir.) 186 F. (2d) 834, 839, 52 A. L. R. (2d) 499, 509; Note, 36 So. Calif. L. Rev. 296.

him personally or by another under his supervision. Hardware Mut. Cas. Co. v. Mitnick, 180 Md. 604, 26 A. (2d) 393. In the instant case, there were no terms of qualification or limitation."

Defendant seizes on the suggestion that had the parents imposed limitations on the use of the car, the result might have been different. However, we deem it significant that the decision laid stress on our reluctance to adopt a construction of the vicarious liability act which would unjustifiably narrow or partially defeat the objective of protecting the public.

In concluding that as a matter of law defendant in the instant case gave his implied consent to the operation of his vehicle by Jeffrey Jenson, we are governed by the following considerations:

(1)  As indicated in the Foster opinion, § 170.54 is to be given a liberal construction to accomplish its purpose.

(2)  If an owner's responsibility may be avoided by secret restrictions between bailor and bailee, it will inevitably encourage collusion to escape liability.

(3)  At the time of the accident, defendant's vehicle was "being operated" with his consent to the extent that his daughter was a passenger and the car was being used for a purpose intended by both of them.

We therefore hold that where the bailee is a member of the immediate family of the bailor[2] and is actually a passenger in control of the bailor's vehicle which is being used for a purpose intended by the parties, the car is being operated with the consent of the owner within the meaning of § 170.54 notwithstanding the fact he has expressly forbidden anyone other than the bailee to drive it.

The matter is therefore reversed and remanded with directions to enter judgment in favor of plaintiffs with respect to the issue of whether or not Jeffrey Jenson at the time of the accident was driving the automobile with defendant's consent.

Reversed and remanded.

---

[2]See, Annotation, 134 A. L. R. 974.