# ALLIED MUTUAL CASUALTY COMPANY AND ANOTHER v. CARROLL JOHN NELSON AND OTHERS.

143 N. W. (2d) 635.

June 17, 1966—No. 40,098.

*Plunkett & Peterson,* for appellants.

*Pemberton, Michaels, Bishop, Seeger & Rosenblad,* for respondent Nelson.

*Walter W. Laidlaw,* for other respondents.

MURPHY, JUSTICE.

This appeal from an order of the district court asserts error in the determination that a nonowner driver of an automobile was using the automobile with the consent of the owner at the time and place of the accident which gave rise to damages and that he was an insured person within the terms of an omnibus clause contained in a policy issued to the owner of the automobile by plaintiff Allied Mutual Casualty Company.

From the record before us it appears that the action originated by a complaint in which the insurance company and the insured automobile owner, Gertrude Harwick, are plaintiffs. The defendants are the driver of the Harwick automobile, Carroll John Nelson; Walter F. Hero, the operator of the other automobile; Madonna Bauer, the owner of the other automobile and a passenger in it; and Muriel Hero, another occupant. It appears that at the time the complaint was filed Madonna Bauer had instituted an action against Gertrude Harwick, but no action had been started by Muriel or Walter Hero. The complaint asked that the court declare the rights of the plaintiff insurance company under the policy of insurance to the effect that it had no duty to defend the action begun by Madonna Bauer or any action which might later be instituted by Muriel or Walter Hero. The complaint asked the court to declare that "Carroll John Nelson was operating the insured vehicle * * * at the time and place [of the accident] without consent or permission * * * of * * * plaintiff Gertrude Harwick." Thereafter, Walter Hero and Muriel Hero filed a counterclaim for damages for injuries sustained in the accident against the owner, Gertrude Harwick. Nelson filed an answer and counterclaim alleging that at the time of the accident he was operating the automobile with the consent and permission of Gertrude Harwick; he asked that the plaintiff insurance company be required to defend and that he be given judgment for attorney's fees and costs incurred by him in these proceedings. Upon these and other pleadings issue was joined. At trial the court stated that he would submit certain questions to the jury "which will require answers and from those answers the court will determine the outcome of the case." It was apparently the intention of the trial court that the issues created by the pleadings would be tried by the

court with an advisory jury under Rule 39.02, Rules of Civil Procedure, and, so far as the record indicates, the parties acquiesced in such procedure.

In his opening statement to the jury counsel for the insurance company and Gertrude Harwick explained to the jury:

"* * * We are not going to try the whole case at this time. There are those questions involving this policy and this contract, although those issues will be submitted, and also in regard to the liability of the accident itself. We are not submitting any question of damages so you won't get any testimony about injuries or the extent of injuries or the amount of money that ought to be granted to compensate injured parties."

After all of the evidence was in the trial court submitted a special verdict by which the jury found that the owner had given consent to Carroll Nelson and her daughter to use the automobile, but that at the time and place of the accident, the vehicle was "being used outside of the consent of Mrs. Harwick." The trial court found, however, that, as a matter of law, the automobile was being used with the consent of the owner at the time and place of the accident; that the negligence of permittee Nelson was the "sole and only direct cause of the accident"; and that "Gertrude Harwick and Carroll John Nelson are insured and covered by the liability policy" issued by the plaintiff insurance company. The only issue left for determination was that of damages.

From the record it appears that the Allied Mutual Casualty Company issued a policy of insurance to the deceased husband of Gertrude Harwick for coverage upon the automobile in question. It does not appear that his estate has been probated nor does there seem to be any question but that the property interest in the automobile passed to his wife and that the daughter, Patricia, who was in the car at the time of the accident, presumably had a property interest in the automobile.

From the oral argument and supplementary briefs in this court it appears that we are called upon to decide whether or not, on the basis of the record, Carroll John Nelson was operating the automobile at the time and place of the accident with the consent of the owner, express or implied, within the meaning of the Safety Responsibility Act, Minn. St.

170.54, and, if so, whether Nelson was an additional insured within the provisions of the omnibus clause contained in the Harwick policy.

The facts may be briefly stated. The defendant Nelson had been keeping company with Mrs. Harwick's daughter, Patricia, and was a frequent visitor at their home in Rochester. On the evening of September 12, 1958, she gave permission to the daughter and Nelson to use the automobile for the purpose of going to the village of Predmore where Nelson lived, a distance of about 10 miles. It was understood that Nelson was to do the driving because Patricia did not have a license. Mrs. Harwick expressly told the young people that the car was not to be driven around and they were to "come right straight back." On their return to Rochester, they did not go directly to the Harwick home but stopped at a sidewalk telephone booth where Patricia called her mother. She told her mother that she and Nelson would like to keep the car longer so that they could use it to attend a movie. The court found that "Mrs. Harwick finally consented and gave Patricia explicit instructions not to drive the car and to come 'straight home after the movie.'" Patricia passed this information on to Nelson. Instead of going to a movie, the young people drove about town and then went to the village of Stewartville, a distance of about 20 miles from Rochester, and after spending a short time there returned to the city. While they were on their way to the Harwick residence, Nelson drove through a stop sign, turned right into the wrong lane of traffic, and struck a motor vehicle owned by defendant and counterclaimant Madonna Bauer and operated at the time by Walter F. Hero. The accident occurred in the city of Rochester and at a time well within the limit in which the young people might have been expected to return from the movie.

■ In support of the contention that the trial court erred in finding, as a matter of law, that Nelson was driving the automobile with the express or implied consent of the owner at the time of the accident, the appellants rely on Liberty Mutual Ins. Co. v. Stilson (D. Minn.) 34 F. Supp. 885, and Truman v. United Products Corp. 217 Minn. 155, 14 N. W. (2d) 120. We are not persuaded that either of these authorities are controlling on the facts before us. In the Stilson case, the driver of the automobile involved, the son of the insured owner, secured permis-

sion to use the car by misrepresentation. If he had told his father the purpose for which he intended to use the automobile, consent would not have been given. In the Truman case, the permission given an employee to use the employer's vehicle was limited to the purposes of the employer's business. There again the bounds of consent were exceeded as to time and place of the accident.

This court has considered the Safety Responsibility Act in numerous decisions. 12 Dunnell, Dig. (3 ed.) § 6515(j). The act, Minn. St. 170.54, provides:

"Whenever any motor vehicle * * * shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle in the operation thereof."

In Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 409, 10 N. W. (2d) 406, 415, 147 A. L. R. 945, we said that the purpose of this act "was to make the owner of motor vehicles liable to those injured by their operation upon public streets or highways where no such liability would otherwise exist." (Italics omitted.)

In Lange v. Potter, 270 Minn. 173, 132 N. W. (2d) 734, we said that the statute should be given a liberal construction to accomplish its purpose. In that case we held that where the bailee of an automobile is a member of the immediate family of the bailor, and is actually a passenger in control of the bailor's vehicle which is being used for a purpose intended by the parties, the car is being operated with the consent of the owner within the meaning of § 170.54, notwithstanding the fact that the bailor had expressly forbidden anyone other than the bailee to drive it.

In the case before us the trial court was persuaded by Eicher v. Universal Underwriters, 250 Minn. 7, 83 N. W. (2d) 895, which involved an action for declaratory judgment determining the respective liabilities of two automobile insurers in certain actions instituted against the plaintiff and his insured employer for damages arising out of an automobile accident in which the plaintiff was involved while driving the employer's

truck. There the owner of the truck authorized the employee to use it traveling to and from the place of employment while the employee's automobile was being repaired and did not limit such use to any particular hour. The employee used the truck during the evening and morning preceding the accident for his own purposes, but thereafter started driving it to his place of employment and was on the highway leading thereto when the accident happened. We held that he was using the truck at the time of the accident within the scope of the owner's permission, even though he would have arrived at work several hours before required, and that therefore the owner and his insurer were liable under the Safety Responsibility Act for the consequences of such accident.

In our most recent decision on the subject, Mullin v. The Fidelity & Cas. Co. 271 Minn. 551, 136 N. W. (2d) 613, we also discussed the Safety Responsibility Act, § 170.54, with reference to the scope of permission given to the nonowner operator. In that case we referred to Lange v. Potter, *supra,* and said (271 Minn. 556, 136 N. W. [2d] 616):

"* * * [W]e held that under our Safety Responsibility Act it is the public policy of Minnesota to disregard oral admonitions of the type here involved regarding the driving of a car where the bailee is in the car at the time of the accident. It is true that in the Lange case the person to whom a restrictive-use permission had been given was a minor child of the owner and that here the bailee of the car was an employee only. We have concluded that this distinction does not justify a more restrictive definition of the phrase 'use of the automobile' as it appears in the policy than the definition given the phrase 'operated * * * with the consent of the owner' appearing in the Safety Responsibility Act, § 170.54, and considered in Lange v. Potter, *supra.*"

Since there was ample evidence to establish negligence as a matter of law on the part of Nelson, the court could properly conclude that such negligence was imputed to the owner. It might be fairly inferred from the evidence that the owner's instructions were essentially admonitory and that it was her intention that the young people might have the automobile

until such time as the movies closed and that her consent extended to the actual time and place of the accident.

■ It is apparently the contention of plaintiff insurance company that under the express contractual undertakings of its policy it has no duty or liability to the nonowner driver Nelson. The insurance policy issued to the driver provided liability—

"* * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * arising out of the ownership, maintenance or use of the owned automobile * * * and the company shall defend any suit alleging such bodily injury or property damage and seeking damages * * *.

"Persons Insured: The following are insureds under Part I:

"(a) With respect to the owned automobile,

"(1) the named insured and any resident of the same household,

"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

\* \* \* \* \*

"Definitions: Under Part I:

"'named insured' means the individual named * * * and also includes his spouse, if a resident of the same household;

"'insured' means a person * * * described under 'Persons Insured';

"'relative' means a relative of the named insured who is a resident of the same household."

It seems to be the position of appellant insurance company that the undertaking to insure "any other person using such automobile, provided the actual use thereof is with the *permission* of the insured" is not co-extensive with the provisions of the Safety Responsibility Act, which imposes liability for the negligent act of the nonowner who is operating the automobile "with the *consent* of the owner, express or implied * * *." (Italics supplied.) It appears from our decisions that the word "consent," as used in the statute, has been treated synonymously with the word "permission," as used in the customary omnibus clause above quoted. Where the permittee is within the scope of the named insured's consent, it follows that he is also within the scope of the named insured's permis-

sion under the omnibus clause. Eicher v. Universal Underwriters, 250 Minn. 7, 83 N. W. (2d) 895; Mullin v. The Fidelity & Cas. Co. 271 Minn. 551, 136 N. W. (2d) 613. See, Exchange Cas. & Surety Co. v. Scott, 56 Cal. (2d) 613, 15 Cal. Rptr. 897, 364 P. (2d) 833.

The facts in this case do not require a holding to the effect that these terms, as used in the statute and in the omnibus clause, are always entirely coextensive. It is well recognized that the effect of the omnibus clause is to give the nonowner the status of an additional insured while he is actually using the automobile with the permission of the named insured. The numerous authorities which have considered this type of coverage are reviewed in helpful discussions found in 7 Am. Jur. (2d) Automobile Insurance, §§ 120 to 122, which indicate that in determining whether the coverage of the omnibus clause applies to a given accident, it is necessary to first decide whether permission or consent was actually given, whether the vehicle was being used at the time of the accident within the scope of the permission granted, and whether there was any deviation from such a permitted use and, if so, the effect of the deviation.[1]

Courts have generally used three approaches in determining when deviation from the purpose and the use for which permission is granted will preclude coverage. They are the "strict" or "conversion" rule;[2] the "lib-

---

[1] 7 Am. Jur. (2d) Automobile Insurance, § 110, states: "In the absence of eccentricities of form, it is clear that an omnibus clause creates liability insurance in favor of one, other than the named insured, answering the description of persons therein contained. Such a person other than the named insured, while using the motor vehicle for the purposes for which it is insured and within the scope of the permission granted, becomes an 'additional insured' by virtue of the omnibus clause the same as if he were named as an insured in the policy. Upon the happening of an accident while the insured motor vehicle is being operated by a qualified additional insured with the permission of the owner, the insurance becomes as to him an independent liability — that is, independent of the insurer's responsibility to the named insured; and the rights of the injured person are the same as if the operator had been a named insured."

[2] Annotations, 5 A. L. R. (2d) 600, 626; 72 A. L. R. 1375, 1403; 106 A. L. R. 1251, 1260; 126 A. L. R. 544, 552.

eral" rule;[3] and the "minor deviation" rule.[4] The last rule, which takes an intermediate position between the "liberal" and "strict" or "conversion" rules, has met with approval by an increasing number of courts. The authorities supporting this position seem to hold that if the use made by the bailee is not a gross violation of the terms of the bailment, even though it may have amounted to a deviation, protection is still afforded to the bailee under the omnibus clause.

Because of the record in this case, it is not necessary for us to consider at length the various theories adopted by courts in considering this question or to express our views as to which rule should be adopted. In our prior decisions, we have proceeded on a case-by-case basis and resolved the issues as to whether or not the bailee was using the automobile within the scope and permission granted on the basis of the particular facts in each case. Here it seems to us that under the recent decisions of this court, already noted, at the time of the accident in which the defendant Nelson was involved the instructions were not so explicit as to justify a holding that there was a substantial deviation from the restrictions imposed, notwithstanding the fact that the young people had not gone to a movie and had driven about in the automobile instead. We accordingly agree that the trial court could reasonably conclude that at the time and place of the accident the automobile was being used "with the permission of the named insured" so as to impose the obligations comprehended by the terms of the policy.

Affirmed.

[3] Annotations, 5 A. L. R. (2d) 600, 629; 72 A. L. R. 1375, 1405; 106 A. L. R. 1251, 1262; 126 A. L. R. 544, 553. Matits v. Nationwide Mutual Ins. Co. 33 N. J. 488, 166 A. (2d) 345; Small v. Schuncke, 42 N. J. 407, 201 A. (2d) 56.

[4] 7 Am. Jur. (2d) Automobile Insurance, § 122.