MILBANK MUTUAL INSURANCE
COMPANY, Respondent,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY, et al.,
Appellants,

Philip Carlton Solum, Respondent,

Township of Cromwell, Respondent,

Charles Virgil Jensen, by Delores
Winjum, his guardian ad litem,
Respondent,

Rebecca Marie Jensen, by Charles B.
Odegaard, her guardian ad litem, et
al., Respondents.

No. CO–82–469.

Supreme Court of Minnesota.

April 1, 1983.

Vogel, Brantner, Kelly, Knutson, Weir & Bye and Carlton J. Hunke, Fargo, N.D., for Milbank Mutual Ins. Co.

Dosland, Dosland & Nordhougen, and Duane A. Lillehaug, Moorhead, Arvesen, Donoho, Lundeen, Hoff, Svingen & Athens and Norman D. Arvesen, Fergus Falls, for Solum.

Kennedy & Nervig and Charles R. Kennedy, Wadena, for Cromwell Tp.

Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner and Gerald S. Rufer, Fergus Falls, Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan and Alden H. Gjevre, Moorhead, for Jensen.

KELLEY, Justice.

In this declaratory judgment action, United States Fidelity and Guaranty Company (USF&G) appeals from an order of the Clay County District Court granting judgment notwithstanding the verdict of the jury to respondent Milbank Mutual Insurance Company (Milbank). The trial court held that USF&G, as the liability insurer of an employer who had permitted one of its employees to operate one of its vehicles, was the primary liability insurer obligated to defend and indemnify the employee and the employer in actions asserting claims against the employee, and that Milbank, the insurer of the employee's personal vehicles, was a secondary or excess insurer. We affirm.

In the summer of 1979, Twin City Construction Company (TCCC), a North Dakota corporation, was engaged in a construction project near Beulah, North Dakota (approximately 275 miles from Fargo). On this project, TCCC's standard practice was to have its employees work four 10-hour days per week, thereby allowing them to return to their homes, generally in the Fargo area, for a long weekend. The employees provided their own transportation between their homes and the work site. Some of them "pooled" rides to and from the job site.

Cahill Law Offices and Steven J. Cahill, Moorhead, for appellants.

On August 17, 1979, a Friday, the TCCC project superintendent, Dennis Bittner, had requested that three employees remain at the job site. This departure from normal practice resulted in the three missing rides home for the weekend, so the superintendent assured them that TCCC would transport them home after work on Friday. Charles Jensen, TCCC's labor foreman, was one of the three who worked that Friday morning. Following completion of the work around noon, Bittner, the job superintendent, Jensen and two others left the job site at Beulah driving a truck owned by TCCC and insured by USF&G.

Bittner and Jensen arrived at Bittner's home near Downer, Minnesota, approximately 25 miles from Fargo. Jensen did not have a ride from Bittner's home to his own home. TCCC's company rules expressly forbade use of company vehicles for personal trips. Notwithstanding the rule, Jensen asked for and received Bittner's permission to drive the TCCC truck home.[1] It is undisputed that Bittner attempted to limit the scope of this permission by telling Jensen, in essence, that he was only to drive the truck home and not drive it around. Jensen was told to take the truck home and park it and not go "joyriding." The two agreed Jensen would return the truck to Bittner either later that night or early the next morning. It is further undisputed that Jensen intended to return the truck to Bittner and had no intention of converting it.

The vehicle was a pickup truck. At the time, Jensen was considering the purchase of a similar vehicle. Upon his arrival home, he and his wife decided to "test drive" the TCCC vehicle. With his wife and infant son in the vehicle, Jensen drove the truck north and east toward Hitterdahl, Minnesota, and then west toward Cromwell Township. The route chosen was north of and away from Bittner's home. The vehicle was involved in a two-car collision in Cromwell Township. Serious injuries resulted.

Milbank, the insurer of three vehicles owned by Jensen, commenced this declaratory judgment action seeking a determination that USF&G, as the insurer of the TCCC pickup truck, was the primary insurer of Jensen and TCCC with responsibility to defend them and pay any damages assessed against them as the result of claims of the injured claimants.

The USF&G policy which provided liability insurance on vehicles owned by TCCC contained an "omnibus clause" which provided:

D. WHO IS AN INSURED:

1. You are an insured for any covered auto.

2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow * * *.

This policy contract was entered into between USF&G and TCCC in North Dakota.

At the trial, the jury, in its answer to a sole interrogatory,[2] found that Jensen, at the time of the accident, was not operating the truck within the scope of the initial permission given him by Bittner. At the trial, Milbank vigorously urged the applicability of the "initial permission" rule. This rule holds that when permission to use a vehicle is initially given, subsequent use short of actual conversion or theft remains permissive within the meaning of the omnibus clause, even if such use was not within the contemplation of the parties or was outside any limitations placed upon the initial grant of permission. Instead, the trial court, in essence, instructed the jury on the "minor deviation" rule found in 4 Minn. Dist.Judges Ass'n, Minnesota Practice, JIG II, 305S (2d ed. 1974). Under this rule, gross departures from the scope of initial permission void liability insurance coverage under the omnibus clause while slight deviations do not. The trial judge, apparently

1. It was undisputed that Bittner had authority to grant Jensen permission to use the TCCC truck for business purposes.

2. The interrogatory read as follows:

At the time and place of the accident, was Charles Virgil Jensen operating the motor vehicle within the terms of the consent of the owner, express or implied? ANSWER: Yes ____ No __X__

following a motion by Milbank for judgment notwithstanding the verdict, made findings of fact, conclusions of law and order for entry of judgment.[3] In ordering entry of judgment in favor of respondent Milbank, the trial court held that since the insurance contract between USF&G and TCCC was entered into in North Dakota, North Dakota law governed the construction and effect of the policy. It further held that in construing omnibus clauses in automobile liability insurance policies North Dakota follows the "initial permission" rule.

■ The trial court's decision that North Dakota law was applicable was based on its belief that "the law of the state where a contract is made governs construction of the contract." At one time this was a correct statement of the law, see, e.g., *Combined Insurance Co. of America v. Bode,* 247 Minn. 458, 463–64, 77 N.W.2d 533, 536 (1956). However, this court has abandoned the lex loci doctrine in favor of the "choice influencing considerations" methodology. *Milkovich v. Saari,* 295 Minn. 155, 161–64, 203 N.W.2d 408, 412–13 (1973). This approach is likewise applicable to conflict-of-law cases involving the interpretation of insurance contracts. *Hime v. State Farm Fire & Casualty Co.,* 284 N.W.2d 829, 832–33 (Minn.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).[4] Moreover, the trial court's conclusion that North Dakota would follow the "initial permission" rule is open to some doubt. In no case has the North Dakota court been called upon to specifically adopt the "initial permission" rule. Although it did note in *Persellin v. State Automobile Insurance Association,* 75 N.D. 716, 719, 32 N.W.2d 644, 646 (1948), that a number of jurisdictions had adopted such a rule, it was unnecessary there for the court to decide whether North Dakota would also do so, since the initial permission in *Persellin* had been, in fact, unlimited.

■ In making the findings of fact and conclusions of law on March 5, 1982, the trial judge, though not specifically saying so, in effect granted judgment notwithstanding the verdict because, in his view, he had instructed the jury on an erroneous theory of law, to-wit, the "minor deviation" rule. Our decisions hold that judgment notwithstanding the verdict may not be granted for errors of law such as improper jury instructions, but rather that a new trial should be granted. *Olson v. Penkert,* 252 Minn. 334, 350, 90 N.W.2d 193, 205 (1958); *Coble v. Lacey,* 252 Minn. 423, 433, 90 N.W.2d 314, 322 (1958); *Northwestern Marble & Tile Co. v. Williams,* 128 Minn. 514, 515–16, 151 N.W. 419, 420 (1915). *See also* Minn.R.Civ.P. 59.01(6). Therefore, if North Dakota law follows the "initial permission" rule and Minnesota follows the "minor deviation" rule, this case should be remanded for entry of judgment in favor of USF&G since the jury found under appropriate instructions that Jensen was not operating the pickup truck at the time of the accident within the scope of the express or implied consent of TCCC. However, if Minnesota follows the "initial permission" rule the trial court reached the correct result because (1) there was no dispute that the initial permission was given to Jensen by

3. Counsel for the parties failed to attach appendices to the briefs. *See* Minn.R.Civ.App.P. 130.01. Had they done so, this court would know just what the procedure was after rendition of the verdict. Normally the trial court makes its findings shortly after rendition of the verdict. In this case, the jury's verdict was returned December 16, 1981. Milbank moved for judgment notwithstanding the verdict on December 21, 1981 (filed December 30, 1981), and the trial court made its findings of fact, conclusions of law and order for entry of judgment on March 5, 1982. A memorandum attached thereto impliedly indicates that the court's March 5, 1982, order was an order

granting the motion, although it does not specifically say so.

4. The choice-of-law methodology is, ultimately, unimportant in this case. If we assume for the sake of argument that North Dakota does, in fact, follow the initial permission rule, then our holding in this case that Minnesota follows the same rule means that there is no "outcome determinative" conflict. In such a case, there is, of course, no need to analyze the choice-influencing considerations. *See Hague v. Allstate Insurance Co.,* 289 N.W.2d 43, 46–7 (Minn.1978), *aff'd,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

Bittner, a person authorized by TCCC to give permission; and (2) there is no evidence contradicting Jensen's statement that he never intended to steal the truck. Correct decisions based upon incorrect reasons should not be reversed. *Kahn v. State,* 289 N.W.2d 737, 745 (Minn.1980); *Schoeb v. Cowles,* 279 Minn. 331, 336, 156 N.W.2d 895, 898 (1968). Accordingly, we must decide whether Minnesota will follow the "initial permission" rule when a motor vehicle is entrusted to an adult.

In our recent case of *Jones v. Fleischhacker,* 325 N.W.2d 633 (Minn.1982), we held that when an adult gave initial permission to a minor under Minn.Stat. § 170.54 (1982), the adult was liable for claims arising out of negligent use of the vehicle by the minor, notwithstanding that at the time and place of the accident the minor was violating explicit instructions of the adult. Thus, under those circumstances we made it clear that Minnesota followed the "initial permission" rule. Because the issue was not there before us, we reserved the determination of whether the "initial permission" rule would be applicable in the situation that here exists—where permission to operate the vehicle was given by an adult to an adult. *Id.* at 637 n. 5. We are now faced with that issue. Moreover, we are faced with the issue of whether the operator is entitled to protection under the owner's liability insurance policy.[5]

In our early case of *Peterson v. Maloney,* 181 Minn. 437, 232 N.W. 790 (1930), we construed the omnibus clause in a policy insuring a vehicle owned by a yacht club being driven at the time of the accident with its consent, though outside the scope of that consent. We there held that since the operator had initial permission, the yacht club's insurer was liable under its

policy.[6] Later cases have focused on the time and place of the accident, requiring the permittee to be within the scope of the owner's consent when the accident giving rise to the claim arises. *Anderson v. Hedges Motor Co.,* 282 Minn. 217, 220, 164 N.W.2d 364, 367 (1969); *Truman v. United Products Corp.,* 217 Minn. 155, 159–60, 14 N.W.2d 120, 122 (1944); *Taylor v. Allstate Insurance Co.,* 286 Minn. 449, 456–57, 176 N.W.2d 266, 271 (1970); *Eicher v. Universal Underwriters,* 250 Minn. 7, 12–13, 83 N.W.2d 895, 899 (1957). In *Anderson* we held that under Minn.Stat. § 170.54 (1965), before liability attached the permittee must be shown to have had permission "at the time and place of the accident," 282 Minn. at 220, 164 N.W.2d at 367, upholding a jury instruction which essentially instructed on the "minor deviation" rule. In *Truman* we also held that vicarious liability would only attach to an owner if the operator had permission "at the time and place of the accident." 217 Minn. at 159–60, 14 N.W.2d at 122. Neither case involved the interpretation of a liability insurance policy insuring the vehicle therein involved. On the other hand, in *Taylor* the omnibus clause contained the restriction: "provided such person's actual operation * * * is within the scope of such permission." 286 Minn. at 456–57, 176 N.W.2d at 271. And in *Eicher* the omnibus clause provided coverage only where the use was "with the permission of the named insured for the purpose or purposes and during the time for which said permission is given." 250 Minn. at 9, 83 N.W.2d at 897. Thus, in *Taylor* and *Eicher* each policy contained a "time and place" limitation. We could perhaps distinguish *Taylor* and *Eicher* from this case based upon the "time and place" limitations commonly found in liability policies at the time

---

5. Counsel argued in briefs in the trial court and here that by virtue of Minn.Stat. § 170.54 (1982) TCCC was vicariously liable and also that the omnibus clause in USF&G's policy provided Jensen with primary "coverage." The trial court's instructions were premised on the statute rather than the policy language. We have generally used the same legal standard to interpret "consent" as used in the statute and "permission and consent" under omni-

bus clauses in automobile liability insurance policies. *See, e.g., Allied Mutual Casualty Co. v. Nelson,* 274 Minn. 297, 303, 143 N.W.2d 635, 640 (1966).

6. We note the policy involved in *Peterson* did not contain time and place limitations that later were frequently placed in omnibus clauses in automobile liability insurance policies.

the policies in those cases were issued. The omnibus clause in USF&G's policy does not expressly contain such limitations.[7] To do so, however, would run contrary to the cases which have held "consent" as used in section 170.54 to be synonymous with "permission" as used in omnibus clauses and liability insurance policies. *See, e.g., Allied Mutual Casualty Co. v. Nelson,* 274 Minn. 297, 303, 143 N.W.2d 635, 640 (1966); *Taylor v. Allstate Insurance Co.,* 286 Minn. 449, 455, 176 N.W.2d 266, 270 (1970). Accordingly, we must decide whether we will continue to follow *Anderson* and *Truman* (and JIG II 305S based thereon) or extend the "initial permission" rule now applicable in cases involving minor permittees to adult permittees.

The enactment of section 170.54 in 1945 reflects the public policy of this state that owners of motor vehicles shall be responsible for torts committed by permittees in the use thereof. The enactment of the statute changed the common law. This court has recognized that public policy dictates that the statute be accorded the construction that will achieve the purpose of giving to persons injured by the negligent operation of automobiles "an approximate certainty" of an effective recovery by making the owner who lent his vehicle to another responsible as well as the possible or probable irresponsible operator. *Hutchings v. Bourdages,* 291 Minn. 211, 189 N.W.2d 706 (1971). *See also* Restatement (Second) of Torts § 485, comment b (1966).

We have increasingly given the statute a liberal construction to effectuate that public policy. Thus, we held in *Lange v. Potter,* 270 Minn. 173, 132 N.W.2d 734 (1965), that the owner of a vehicle, who had permitted his child to drive it with the admonishment that she should permit no other

person to drive, was liable for a negligent act committed by one to whom the child had given permission to operate the vehicle. We there noted "our reluctance to adopt a construction of the vicarious liability act which would unjustifiably narrow or partially defeat the objective of protecting the public." *Id.* at 178, 132 N.W.2d at 737. We likewise noted in *Granley v. Crandall,* 288 Minn. 310, 313, 180 N.W.2d 190, 192 (1970), that the public policy of the state as reflected in section 170.54 is better served by holding as a matter of law that a parent who permits a child to use a car is deemed to have given consent to the operation of the vehicle by a third person driving with the child's permission or consent. In *Anderson v. Hedges Motor Co.,* 282 Minn. 217, 218, 164 N.W.2d 364, 366 (1969), even though we applied the "minor deviation" rule, we recognized that public policy required that the statute be given a liberal interpretation so as to effect its purpose of protecting victims of automobile accidents caused by negligent operators. The policy of giving the statute a liberal construction for the protection of the public was reaffirmed in *State Farm Mutual Automobile Insurance Co. v. Dellwo,* 300 Minn. 409, 412, 220 N.W.2d 367, 369–70 (1974), and *Shelby Mutual Insurance Co. v. Kleman,* 255 N.W.2d 231, 233 (Minn.1977).[8] Finally, as indicated in *Jones v. Fleischhacker,* 325 N.W.2d 633, 637 (Minn.1982), we held that if initial permission was given to a minor, absent acts amounting to theft or conversion, the owner would be vicariously liable notwithstanding that the permittee at the time and place of the accident was operating the vehicle outside the scope of consent. Throughout this entire line of cases, we have consistently reiterated that public poli-

7. Over the years there has existed a general trend toward the expansion of omnibus clauses. The trend probably reflects changes in social attitudes to extend the benefits of automobile liability insurance policies so as to broadly protect permittees as well as a diminished concern of insurance companies concerning the cost of supplying broader coverage, especially since the word "permission" has bred a most costly and wasteful type of litigation. *See* R.

Keeton, Insurance Law—Basic Text § 4.7(c) (1971).

8. In both cases, we upheld trial court determinations that the owner did not extend initial permission to operate the vehicle, but in so doing we commented that this court has consistently expanded liability by liberally construing section 170.54 to accomplish its stated purpose.

cy demands the statute be given a liberal interpretation to accomplish its purpose. In essence, our focus has been on the "victim" of automobile accidents rather than on the owner/driver. *Leppla v. American Family Insurance Group,* 306 Minn. 478, 238 N.W.2d 592 (1976).

This trend of our cases to interpret the Safety Responsibility Act and omnibus clauses in liability insurance policies so as to effect public policy affording protection to victims of automobile accidents is consistent with the jurisprudential trend in other jurisdictions. Today, the initial permission rule is said to be supported by the "weight of authority." *Konrad v. Hartford Accident & Indemnity Co.,* 11 Ill.App.2d 503, 137 N.E.2d 855 (1956). The rule is apparently followed in the courts of Connecticut, Louisiana, Massachusetts, New Jersey, Tennessee, Wisconsin and Texas.[9] Primary justification for the "initial permission" rule is that it alone guarantees fulfillment of the state's policy of compensating innocent accident victims from financial disaster. Courts also have recognized that application will discourage collusion between bailor and bailee in order to escape liability; and courts have noted that the "initial permission" rule will greatly reduce a most costly and wasteful type of litigation. *See, e.g., Jordan v. Consolidated Mutual Insurance Co.,* 59 Cal.App.3d 26, 41, 130 Cal.Rptr. 446, 455 (1976).

Not only has this court perceived that the public policy of this state favors a liberal interpretation of the statute and liability insurance policy omnibus clauses so as to afford compensation to victims of automobile accidents, but the legislature has likewise, by adoption of several acts, evidenced

a similar public policy. In addition to section 170.54, it has enacted 1971 Minn.Laws ch. 813 (current version at Minn.Stat. § 65B.06 (1982)) to insure the procurance of automobile liability policies by persons unable to secure coverage through ordinary insurance markets. It enacted 1967 Minn. Laws ch. 395 (current version at Minn.Stat. § 65B.13 (1982)) prohibiting insurers from discriminating against operators of automobiles because of race or physical handicap. It has placed limitations on an insurer for cancelling or reducing limits during the policy period. 1976 Minn.Laws ch. 463 (current version at Minn.Stat. § 65B.15 (1982)). In 1974 the legislature enacted the Minnesota No-Fault Automobile Insurance Act, Minn.Stat. ch. 65B (1982), in which it clearly indicated that the public policy of this state was to relieve severe economic stress of uncompensated persons injured in automobile accidents. That same act mandates that all owners of automobiles have liability insurance which provides, in addition to so-called benefits, (1) liability insurance in stated amounts, Minn.Stat. § 65B.49, subd. 3 (1982); (2) uninsured motor vehicle coverage, Minn.Stat. § 65B.49, subd. 4 (1982); and (3) makes it a misdemeanor for any owner of an automobile to operate or permit another to operate on the streets and highways a vehicle upon which the mandated coverage is absent. Minn.Stat. § 65B.67, subd. 2 (1982). This legislative history clearly indicates that the public policy of this state favors protection of the uncompensated victims of automobile accidents over any interest of an owner-insured or his insurer that he be not subject to liability when his permittee exceeds the scope of the

---

**9.** The initial permission rule has also received the endorsement of courts in the following states: California: *Hartford Accident and Indemnity Co. v. Abdullah,* 94 Cal.App.3d 81, 156 Cal.Rptr. 254 (1979); Hawaii: *Columbia Casualty Co. v. Hoohuli,* 50 Haw. 212, 437 P.2d 99 (1968); Idaho: *Farm Bureau Mutual Insurance Co. of Idaho v. Hmelevsky,* 97 Idaho 46, 539 P.2d 598 (1975); Illinois: *Coronet Insurance Co. v. Jones,* 45 Ill.App.3d 232, 3 Ill.Dec. 909, 359 N.E.2d 768 (1977); Kentucky: *Maryland Casualty Co. v. Hassell,* 426 S.W.2d 133 (Ky. App.1967); Louisiana: *Carey v. Ory,* 421 So.2d

1003 (La.App.1982); Massachusetts: *Dickinson v. Great American Indemnity Co.,* 296 Mass. 368, 6 N.E.2d 439 (1937); Nevada: *United States Fidelity & Guaranty Co. v. Fisher,* 88 Nev. 155, 494 P.2d 549 (1972); New Hampshire: *Government Employees Insurance Co. v. Johnson,* 118 N.H. 899, 396 A.2d 331 (1978); New Jersey: *Lewandowski v. National Grange Mutual Insurance Co.,* 149 N.J.Super. 591, 374 A.2d 489 (1977); and Oregon: *Ryan v. Western Pacific Insurance Co.,* 242 Ore. 84, 408 P.2d 84 (1965).

initial permission. In our view, by extending initial permission to a vehicle operator, under section 170.54 the owner assumes the risk of liability attaching should the permittee not follow his use limitations; and the owner's insurer, under the omnibus clause in the automobile liability insurance policy, must afford liability coverage to the owner in the absence of facts indicating theft or conversion by the permittee.

 Accordingly, we hold, to the extent that *Anderson* and *Truman* hold that major departures by a permittee from limitations placed upon initial permission under section 170.54 relieves the bailor from vicarious liability for negligent acts of the permittee, they are overruled. Consequently, if the owner of an automobile insured by a liability policy containing an omnibus clause extending coverage to operators who have permission of the named insured grants another permission to use the vehicle, any violation of a limited scope of permission by the operator, short of theft or conversion of the vehicle, will not relieve the insurer from affording to the named insured coverage protecting him against claims made against him by an injured third party. Since the terms of the omnibus clause in this case in USF&G's policy specifically extend omnibus coverage to one who has permission from the owner, that insurance extends to the permittee, Jensen.

Accordingly, we affirm the trial court and hold that USF&G's policy is primary insurance protecting both Jensen and TCCC. Since this is the result reached by the trial court, although reached by a different analysis, the judgment of the trial court is affirmed.

Affirmed.