**NORTH STAR MUTUAL INSURANCE COMPANY, EMCASCO Insurance Company, Respondents,**

**v.**

**Roxanne RAINCLOUD, Defendant,**

**Martin Raincloud, Sr., Appellant.**

No. C1–97–100.

Court of Appeals of Minnesota.

June 3, 1997.

Review Denied July 10, 1997.

Marcus J. Christianson, Christianson Stoneberg, Giles & Stroup, P.A., Marshall, for respondent North Star.

William P. Harrie, Nilles, Hansen & Davies, Ltd., Fargo, ND, for respondent EMCASCO.

Gary M. Hazelton, Cann, Haskell, D'Albani, Schueppert, Hazelton & Rodgers, P.A., Bemidji, for appellant.

Considered and decided by TOUSSAINT, C.J., and RANDALL and HOLTAN *, JJ.

## OPINION

HARVEY A. HOLTAN, Judge.

The district court declared that respondents' homeowner's policies did not provide coverage for a driver's unauthorized operation of an all-terrain vehicle. We affirm.

## FACTS

On August 12, 1995, Roxanne Raincloud, her children, Amy and Alicia, and her friend, Brian Holthusen, went to visit Richard and Donna Lian at the Lians's cabin in northern Beltrami County. Roxanne Raincloud and Brian Holthusen were drinking beer when they arrived at the Lians's cabin.

Roxanne asked the Lians if 12–year–old Alicia could drive their all-terrain vehicle (ATV). Initially, Richard Lian was reluctant to let Alicia drive the ATV, but after Alicia demonstrated that she knew how to operate the ATV, Richard Lian gave her permission to drive around slowly in front of the cabin.

Richard Lian and Roxanne Raincloud went into the cabin and sat down to visit with Donna Lian and Brian Holthusen. A short time later, Roxanne went outside and got on the ATV. Roxanne drove away from the cabin, with Alicia and Amy on the back of the ATV. After turning around and heading back to the cabin, Roxanne lost control of the ATV, causing it to roll over on Amy, who died a short time later as a result of the accident.

The Lians' homeowner's policy with respondent EMCASCO Insurance Company defined an "insured" as including persons using an ATV with the Lians's "consent." An endorsement to the Lians's policy with respondent North Star Mutual Insurance Company excluded from its definition of "insured" a person using an ATV without the Lians's "permission."

Respondents sought a declaratory judgment that Roxanne Raincloud was not an "insured" under the policies because she had used the Lians's ATV without their permission or consent. The district court granted summary judgment in favor of respondents.

## ISSUE

Was Roxanne Raincloud an "insured" under respondents' homeowner's policies because the Lians, by consenting to Alicia's use of the ATV, impliedly permitted its operation by anyone to whom Alicia gave permission?

## ANALYSIS

■ On appeal from a summary judgment declaring the terms of an insurance policy,

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

we must determine "whether there are any genuine issues of material fact and whether the district court correctly applied the law." *Kolby v. Northwest Produce Co.*, 505 N.W.2d 648, 650 (Minn.App.1993). The interpretation of an insurance policy is a question of law, which we review de novo. *Id.*

Respondents' homeowner's policies excluded coverage when the Lians's ATV was being used without their permission or consent.[1] It is undisputed that Roxanne Raincloud did not have express permission or consent from the Lians to operate the ATV. It is also undisputed that Roxanne's daughter, Alicia, did have express permission or consent from the Lians to use the ATV. The Rainclouds argue that by giving Alicia permission to use the ATV, the Lians impliedly consented to Alicia's decision to allow her mother to use the ATV.

The supreme court addressed a similar argument in *Milbank Mut. Ins. Co. v. United States Fidelity & Guar. Co.*, 332 N.W.2d 160 (Minn.1983). There, an employer gave an employee permission to drive the employer's truck home, but told the employee not to go "joyriding." *Id.* at 162. Nevertheless, the employee took his wife and son for a ride, which resulted in an accident. *Id.* The employer's automobile insurance policy contained an "omnibus clause,"[2] covering anyone else using the vehicle with the employer's permission. *Id.*

The *Milbank* court compared the term "permission," in the omnibus clause, and the term "consent," in Minnesota's Safety Responsibility Act, which provides:

> Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

Minn.Stat. § 170.54 (1996). The court discussed the policy of the Safety Responsibility Act, which is to ensure that innocent accident victims are compensated by making an owner, as well as an operator, of a motor vehicle responsible for the behavior of the operator. *Milbank*, 332 N.W.2d at 165. The court noted the trend to give the act a liberal construction to effectuate that policy. *Id.* at 165–66.

In light of its conclusion that the Safety Responsibility Act, as well as omnibus clauses in liability policies, should be liberally construed to protect victims of automobile accidents, the *Milbank* court construed the omnibus clause in the employer's policy as encompassing the "initial permission rule," which provides that if an owner of a vehicle insured by a liability policy containing an omnibus clause grants permission to another to use the vehicle, any violation of the scope of permission, short of theft or conversion, does not relieve the insurer from covering a claim by a third party. *Id.* at 166–67.

■ Under the *Milbank* analysis, if Roxanne Raincloud had been driving a "motor vehicle," she would have been an insured under respondents' policies. An ATV, however, is not a "motor vehicle" governed by the Safety Responsibility Act. *Schumacher v. Heig*, 454 N.W.2d 446, 448 (Minn.App.1990).[3]

■ We conclude that the initial permission rule is not applicable to situations involving ATVs. The *Milbank* court's discussion of the initial permission rule was inextricably

---

1. The terms "consent" and "permission" have been treated synonymously when comparing statutory requirements and omnibus clauses in automobile liability insurance policies. *Milbank Mut. Ins. Co. v. United States Fidelity & Guar. Co.*, 332 N.W.2d 160, 164 n. 5 (Minn.1983); *Allied Mut. Cas. Co. v. Nelson*, 274 Minn. 297, 303, 143 N.W.2d 635, 640 (1966).

2. An "omnibus clause" is a term commonly used to refer to a policy definition of "insured" as including persons who use a named insured's vehicle with the named insured's permission. *Kolby*, 505 N.W.2d at 650.

3. *Schumacher* involved a common law negligence action, and the focus of the decision was the owner's common law tort liability for negligent entrustment. The *Schumacher* court was not asked to construe the terms of an insurance policy; therefore the question whether the initial permission rule should be extended to ATVs has not been expressly decided in Minnesota. But note the court's comment that the Safety Responsibility Act does not apply to ATVs.

entwined with the court's discussion of the Safety Responsibility Act. The policy concerns addressed by that act are simply not applicable to ATVs.

Automobile liability policies 'are intended to protect victims of automobile accidents on public roads. The greater public welfare is protected by extensive regulation of motor vehicles and their operators; thus, the legislature has determined that an owner of a motor vehicle should be liable for the acts of one who drives it on public roads or highways with his express or implied permission.

Here, on the other hand, the Lians's ATV was insured by a homeowner's policy. A homeowner's policy is not designed for the protection of the greater public welfare, but for the protection of the homeowner on his private property. *See Lang v. General Ins. Co.*, 268 Minn. 36, 41, 127 N.W.2d 541, 544 (1964) (concluding that homeowner's policy was designed to protect homeowner against fire, windstorm, and liability arising out of occurrences on premises).

An ATV is ordinarily operated on private property, in an unstructured environment uncontrolled by signs or other similar regulations. Extending the initial permission rule to this type of situation is not obviously consistent with the purposes of the initial permission rule: to protect the public at large on public roads and highways. If the initial permission rule is to be extended to ATVs, such extension should be made by the legislature, not this court.

We note that even if we were inclined to extend the initial permission rule to a situation involving an ATV, the rule is not applicable to a situation involving theft or conversion. *Milbank*, 332 N.W.2d at 167. Here, we find it difficult, if not impossible, to believe that Alicia, a 12–year–old child, could have actually granted (or denied) her mother permission to drive the ATV. Under such circumstances, Roxanne Raincloud's operation of the ATV could be considered tantamount to a conversion.

■ We also conclude that the specific language in the Lians's insurance policies covering "use" of an ATV with their permission or consent did not provide coverage for Roxanne Raincloud's use of the ATV. *See American Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983) (concluding that insurer's liability is governed by contract); *Grossman v. American Family Mut. Ins. Co.*, 461 N.W.2d 489, 493 (Minn.App.1990) (concluding that "court's function is to determine what the parties' agreement was and to enforce it"), *review denied* (Minn. Dec. 20, 1990).

■ The Rainclouds argue that Alicia was still "using" the ATV, even though her mother was actually "operating" the ATV. We recognize that "use" of an ATV may differ from the "operation" of an ATV. *West Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877, 879 (Minn.1986). While "operation" of a vehicle necessarily involves its use, the "use" of a vehicle is not synonymous with its "operation." *Id.*

■ To "use" a vehicle without actually operating it, however, the user must still retain some supervisory control over the vehicle. *See Woodrich Constr. Co. v. Indemnity Ins. Co.*, 252 Minn. 86, 93, 89 N.W.2d 412, 418 (1958) (concluding that "use" of motor vehicle includes exercise of supervisory control over its movements). Here, the Rainclouds cannot seriously claim that Alicia, a 12–year–old passenger on the ATV, retained supervisory control over the ATV, which was being driven by her mother.

Again, we stress that the policies at issue here are homeowner's policies, not motor vehicle policies. The plain meaning of the policies extend coverage only to persons who use the ATV with the Lians's consent or permission. Absent any reference to the initial permission rule, we see no reason to construe the policies in a manner inconsistent with their specific language.

## DECISION

Because Roxanne Raincloud was using the Lians's ATV without their permission or consent, she was not an insured under their homeowner's policies.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. I suggest there is no good reason why the initial permission rule, which applies to operators of motor vehicles, should not apply to operators of all-terrain vehicles (ATVs). The strong public policy argument supporting the initial permission rule for cars has never been seriously questioned. *See Milbank Mut. Ins. Co. v. United States Fidelity & Guar. Co.,* 332 N.W.2d 160, 165 (Minn.1983) (discussing public policy of holding motor vehicle owners responsible for torts committed by others using the motor vehicles with permission).

The last few decades have seen a proliferation in the use of ATVs, personal watercraft, snowmobiles, and other kinds of recreational transportation. They perform similar functions to automobiles (some ATV's fall within at least one statutory definition of "motor vehicle," Minn.Stat. § 168.011, subd. 4(b), (c) (1996)), but with one notable exception. None of the above has anywhere near the built-in safety features for drivers and for passengers that cars do. It would seem axiomatic if we are to spread the risk among drivers and insurance companies, *see Black Hills Corp. v. Commissioner of Internal Revenue,* 73 F.3d 799, 807 n. 4 (8th Cir.1996) (referring to the "basic risk-spreading principles underlying insurance"), that the public policy supporting initial permission coverage on automobiles should be employed at least as stringently, if not more so, on ATVs.

I disagree with the majority's simplistic analysis of a homeowner's policy wherein it states that a homeowner's policy "is not designed for the protection of the greater public welfare, but for the protection of the homeowner on his private property." A built-in feature of all homeowner's policies is the liability portion! As far as I know you cannot even delete the liability coverage to save a few dollars of premium. I would not doubt it if someone knowledgeable in the insurance industry said that most people buy their homeowner's insurance thinking of first-party protection against fire and windstorm damage and do not focus on the fact, or perhaps do not even realize, that they have liability coverage. But if that is a fact, it still changes nothing. The majority of all automobile insurance policies in this country are not liability only, but are "full coverage" which includes first-party protection for the automobile owner against fire, windstorm, theft, and collision. In fact, I would suggest that a significant number of people, when they go shopping for insurance coverage for a new mortgaged vehicle, are more concerned about the collision and comprehensive aspects than the liability limits. Yet, the reasons they bought the automobile policy have nothing to do with the rule that on the liability portion, initial permission is the standard.

I further disagree with the majority's speculation that 12–year–old Alicia did not have the capacity to grant her mother permission to drive the ATV. There is nothing in the record whatsoever to support an inference that it was close to a theft or tantamount to a conversion. It is pure speculation based simply on the mother-daughter relationship that the mother leaned on or coerced Alicia to give her permission. There are no facts to support that inference. From time to time, parents do borrow vehicles from their teenage sons or daughters who, although minors, are still licensed to drive. Yes, there may be a built-in inference that it is more difficult for a teenage son or daughter to refuse their mother or father as opposed to a friend, but that is just speculation until the record shows credible evidence that that happened. There is no such evidence here.

I respectfully dissent and would employ the identical analysis to this ATV that would be applied to an automobile and I would, thus, find coverage for the accident.