TASI and FA'ASAGA MAUGA, Plaintiffs

v.

FA'AFETAI TO'OTO'O, PURSE SEINER SERVICES
and NATIONAL PACIFIC INSURANCE, Defendants

High Court of American Samoa
Trial Division

CA No. 2-90

May 7, 1990

Before KRUSE, Chief Justice, VAIVAO, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiffs, Robert A. Dennison III
 For Defendants NPI and Purse Seiner, John L. Ward II

On Motion for Summary Judgment:

*Introduction*

Vani Atafua rented a car from Purse Seiner Services (hereinafter "PSS"), under a rental agreement which expressly prohibited other drivers.[1] Subsequently, one Fa'afetai Tuatoo somehow ended up behind

---

[1] The relevant provision reads as follows: "Vehicle shall not be used, operated or driven [b]y any person other than the Customer signing this Agreement unless written consent of lessor is endorsed on Page 1. If such consent is wanted, such other driven [sic]

the wheel of the rented car, and an accident resulted. National Pacific Insurance (hereinafter "NPI") is PSS's insurer for the third party liability insurance coverage mandated by the territorial Compulsory Insurance Act, A.S.C.A. §§ 22.2001 et seq., (hereinafter "the Act").

The victims of the accident are suing the driver Fa'afetai Tuatoo, the rental agency PSS, and the rental agency's insurance carrier NPI.[2]

NPI and PSS move to dismiss or, in the alternative, for summary judgment, contending that insurance coverage did not extend to Fa'afetai Tuatoo (the second permittee) since the vehicle owner (PSS) had, by the terms of the rental agreement, forbidden Atafua (the first permittee) from allowing anyone else to use the vehicle. To the contrary, plaintiffs contend that coverage does indeed extend to this situation under the American Samoa compulsory insurance laws. Plaintiffs also submit that material questions of fact remain--namely, whether the renter gave permission to the second permittee and whether the renter was even made aware of the restriction.

The insurance policy defines the insured as follows: "'Insured' means and includes only the named Insured and a person who is using an insured vehicle with the express or implied permission of the named Insured . . . . " This definition of "insured" is consistent with the Act's requirements of a policy's Omnibus Clause. The statute mandates that a policy "shall insure the person named therein and any other person who uses the vehicle or vehicles with the express or implied permission of the named insured . . . . " A.S.C.A. § 22.2003(2). Given the prohibitory provisions of the rental agreement regarding third party use of the rental vehicle, the question arises whether permission can be "implied" in the circumstances --- implied permission would extend insurance coverage to Tuatoo under the policy and the Act.

### Discussion

The problem posed by the permittee's permittee within the meaning of the omnibus clause has been the source of much litigation.

---

or drivers are also offered to herein as Customer."

[2] The Act gives an injured person the right of direct action against an insurer, within the terms and limits of the insurance policy. A.S.C.A. § 22.2018.

The courts are divided on the rules for determining whether a second permittee who is expressly prohibited from use of the vehicle by the owner's instructions to the original or first permittee nevertheless has "implied" permission and is therefore an omnibus "insured" within the meaning of the Act.

## I. The Initial Permission Rule

Under the "initial permission" rule developed in some states, PSS's initial permission to Atafua would be held effective as to Atafua's permittees, regardless of the fact that PSS had attempted to limit the scope of its consent to its "Customer" only. The initial permission rule extends coverage whenever the first permittee received permission, regardless of what the permittee does with the car, except in situations of theft or conversion. This rule is founded on public policy. "Primary justification for the 'initial permission' rule is that it alone guarantees fulfillment of the state's policy of compensating innocent accident victims from financial disaster." *Milbank Mutual Insurance Co. v. U.S. Fidelity*, 332 N.W.2d 160, 166 (Minn. 1983). Likewise, it was noted in *Williams v. American Home Assurance Co.*, 297 A.2d 193, 197 (N.J. 1972), that a "liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured." *See also* Annotation, *Omnibus Clause as Extending Automobile Liability Coverage to Third Persons Using Car with Consent of Permittee of Named Insured*, 21 A.L.R. 4th 1159 § 3, 1185 § 10 (1983). In *Odolecki v. Hartford Accident & Indemnity Company*, 264 A.2d 38 (N.J. 1970), a mother allowed her son to drive, with the repeated admonition not to let anyone else drive the car. The son allowed a friend to use the car and a crash occurred. The omnibus clause in question extended coverage to any person using the vehicle "provided the actual use of the automobile is by the named insured or such spouse or with the permission of either." *Id.* at 39. The court noted that the initial permission rule had already been adopted in cases involving a permittee who deviated from the scope of the permission granted. Citing policy in favor of limiting litigation and assuring that all persons wrongfully injured have financially responsible persons to look to for damages, the court extended coverage to the second permittee despite the named insured's prohibition on driving.

Another application of the initial permission rule is presented in *Milbank Mutual Insurance Co. v. U.S. Fidelity, supra.* The court held that when a motor vehicle owner initially consents to use by a permittee, subsequent use short of conversion or theft remains permissive even if the subsequent use was outside limitations placed on the initial grant of

38

permission. In this case, the driver was given permission to take the vehicle home but was not supposed to use it further. The accident occurred during a subsequent test-drive. The court held that if a named insured grants another permission to use the vehicle, "any violation of a limited scope of permission by the operator, short of theft or conversion of the vehicle, will not relieve the insurer from affording to the named insured coverage protecting him against claims. . . ." *Id.* at 167. Significantly, the court also noted that Minnesota statutory law would impose liability on the vehicle owner for torts committed by permittees using his vehicle. *Id.* at 165. The court thus acknowledged an independent and separate basis for the imposition of liability on the vehicle owner. In addition, the court noted several related statutes which evidenced a general legislative intent of affording compensation to victims of automobile accidents.

## II. *The Strict Rule*

In contrast, this view is generally stated as "[i]f the owner of the car expressly forbids the permittee to lend his car to another, but the permittee nevertheless allows a second permittee to drive the car in violation of the named insured's express orders, the insurer is not liable while the second permittee is driving. . . ." 12 Couch on Insurance 2d § 45:410 (1981). Where "the insured expressly prohibits the operation of a vehicle by any person other than the permittee, a second permittee does not have permission and is not an omnibus insured." 12 Couch, *supra. See also* Annotation, *Omnibus Clause as Extending Automobile Liability Coverage to Third Persons Using Car with Consent of Permittee of Named Insured*, 21 A.L.R.4th 1167 § 7 (1983); 7 Am. Jur.2d *Automobile Insurance* § 251 (1980). Thus under the strict rule, the insured owner's permission is essential for the extension of coverage in order to render the insurer liable.

Cases applying this rule generally adhere to the literal statutory language. For example, in *Sabino v. Junio*, 272 A.2d 508 (Pa. 1971), a Hertz rental car was rented by one individual and then wrecked by an unauthorized driver. The court noted that the insurance policy covered only the renter who signed the agreement and observed that the court could not change the terms of the policy. The relevant enactment was similar to American Samoa's in that it required only that the insurance cover persons using the car with the permission of the insured, in this

39

case, Hertz.[3] The unauthorized driver did not have Hertz's permission and therefore was not covered by the insurance. Similarly, in *Liberty Mutual Insurance Co. v. Mueller*, 432 F. Supp 325 (W.D. Va. 1977), *aff'd* 570 F.2d 508 (4th Cir. 1978), a friend of the renter was, at the time of the accident, driving an Avis rental car in contravention of the rental agreement. The statutorily required omnibus clause specified that any person using the car with the permission of the named insured (the rental agency) was covered. The court noted that in Virginia "express permission for a given purpose does not imply permission for all other purposes," and that "permission cannot be inferred where it has been explicitly denied." *Id.* at 328. The court also noted, however, that a stricter view of implied permission is appropriate where the original permission of the insured is given in furtherance of the insured's business purposes, while a more liberal interpretation is correct when the original permission was granted for personal or social purposes. *Id.* In *Colston v. Liberty Mutual Insurance Company*, 210 So.2d 152 (La. App. 1968), the lessee of the car gave another driver, Moses Key, express permission to use the car despite signing an agreement that only the lessee would drive. An accident occurred while Moses Key was driving. In the ensuing suit, it was held that coverage did not extend to the unauthorized driver and the insurance company was granted summary judgment. The court noted that the insurance agreement's requirement of naming any other drivers was reasonable because it allowed the lessor an opportunity to investigate all persons who were to be afforded an opportunity to drive the car. Similar results were reached in *American Motorists Insurance Co. v. Samson*, 596 F.2d 804 (8th Cir. 1979), where permission was held not to extend to the son of the permittee, and in *Whittaker v. Royal Globe Insurance Companies*, 471 A.2d 1149 (N.H. 1983), where the court observed that the extension of implied consent was inappropriate where there were precise restrictions under the rental agreement.

### III. *The Strict versus Initial Permission Rule*

The initial permission rule has been spoken of by one commentator as a "stern measure of judicial regulation of the terms of omnibus clauses, . . . ." R. Keeton, Insurance Law 226 §4.7(b)(2) (1971). As noted above, the rule is a creature of policy. In *Odolecki v.*

---

[3] The statute required the owner's liability policy to "insure the person named therein and any other person as insured using any such motor vehicle . . . with the express or implied permission of such named, insured . . . ." *Sabino*, 272 A.2d at 509 (quoting Pennsylvania Vehicle Code, Act of April 29, 1959, P.L. 58, Section 1421, 75 P.S. 1421(b)(2)).

*Hartford Accident and Indemnity Co.*, *supra*, for example, the court, while overruling a case directly on point, upheld the initial permission rule and stated that "[a] second and more important policy is that of assuring that all persons wrongfully injured have financially responsible persons to look to for damages." *Id.* at 42.

These are admirable and noble sentiments and there can be little quarrel with such policy goals. On the other hand, "financial responsibility," like many other civilized notions which cost money, is a matter of relative concern. What might be regarded, from a financial point of view, as thoroughly responsible in American Samoa, might be well be viewed in California as thoroughly irresponsible. Thus, the initial inquiry is what are the policy sentiments expressed by our Fono.[4]

A glance at the Act tells us immediately that the Fono did not attempt to provide for *all* hapless victims of the highway. Indeed, the legislature has arbitrarily limited financial responsibility to: 1) victims who can prove actionable fault on the part of a named insured; and 2) victims who can establish actionable fault on the part of other drivers operating a vehicle with the expressed or implied permission of the named insured. A.S.C.A. § 22.2003(2). Furthermore, the issue of whether a particular driver has the insured's permission --- and is, therefore, an omnibus insured --- is a matter of fact to be proven on the evidence. *Sataua v. Himphill*, 5 A.S.R.2d 61 (1987); *Toleafoa v. Sioka*, 5 A.S.R.2d 18 (1987). On the other hand, the adherents of the initial permission rule apparently seek to do away altogether with the very factual inquiry --- of whether a driver, albeit a second permittee, has the express or implied permission of the named insured --- envisaged by the requirements of A.S.C.A. § 22.2003(2).

The initial permission rule is a minority rule,[5] and given the requirements of the Act, the adoption of this rule would be tantamount

---

[4] The Court must very careful to avoid enlarging on public policy by judicial fiat since other interdependent policy considerations --- such as fiscal responsibility and whether we can afford it --- will inevitably come into play. These are matters within the Fono's exclusive competence.

[5] *Government Employee Insurance Co., v. Johnson*, 396 A.2d 331, 333 (N.H. 1978); 4 A.L.R.2d at 40-41; 21 A.L.R.4th, *supra* at § 2[a]; Keeton, *supra* at 226 § 4.7(b)(2). *But see Milbank Mutual Insurance Co. v. U.S. Fidelity*, *supra* at 166 ("the initial permission rule is said to be supported by the weight of authority.") (quoting Konrad v. Hartford Accident & Indemnity Co., 137 N.E.2d 855 (Ill. App. 1956)).

to judicial legislation in the guise of statutory construction. As noted by Professor Keeton, "[i]ssues rising from the use of the insured vehicle by . . . the permittee's permittee . . . are complicated by the major shortcoming of omnibus clauses in general; that is, all too often there is room for doubt and debate about one or more decisive fact-oriented questions." Keeton, *supra* at 226. This shortcoming prompted the judicially created "initial permission" rule in order to avoid having to otherwise confront those numerous fact-oriented questions concerning permission. *Id.* It was a lot simpler to impose a rule in the name of policy which readily implied permission to all second permittees, rather than struggle with complicated questions concerning the terms and scope of a named insured's permission in order to discover whether or not a second permittee is an omnibus insured.[6]

The American Samoa statutory scheme does not reflect the same comprehensive policy objectives that have been invoked by certain jurisdictions to justify the adoption of the initial permission rule. The straightforward language of the Act only requires the extension of coverage to the named insured's express or implied permittee(s). Therefore, in order to extend omnibus coverage envisaged by the Act to a second permittee, it must be shown, as with every other issue of fact, that the second permittee had the expressed or implied permission of the named insured as well. In American Samoa, implied permission cannot be deemed as a matter of law to exist for all uses short of theft or conversion.

### IV. Motion to Dismiss or for Summary Judgment

We now turn to the defendants' motion. Summary judgment is appropriate when there is no genuine issue of material fact requiring trial. *Palelei v. Star Kist Samoa*, 5 A.S.R. 2d 162, 166-67 (1987).

Movants in their argument appear to suggest that the prohibition clause against other drivers forecloses further inquiry into the issue of expressed or implied permission and that *ipso facto* a prohibition clause

---

[6] Avoiding the tedium of litigating details of permission and use is one avowed rationale for the initial permission rule. *See, e.g., Odoleck v. Hartford Accident & Indemnity Co., supra* (overruling *Baesler v. Globe Indemnity Co.*, 162 A.2d 854 (N.J. 1960)) which held the question of coverage of a second permittee under an omnibus clause to be dependent upon the nature of the permission given to the first permittee. In overruling *Baesler*, the *Odolecki* court imposed the initial permission rule to avoid litigating omnibus permission issues by allowing omnibus coverage to all second permittee drivers.

in the automobile rental agreement conclusively settles the issue of permission under the omnibus clause. Like the initial permission rule, such a suggestion is repugnant to the Act. It similarly proposes the total displacement of a factual inquiry into a statutory issue by the imposition of judicial rule for general application.

Given the public policy aims of automobile compulsory insurance legislation, a number of cases have found implied permission, notwithstanding expressed prohibition. For example, in *Schelving v. Johnson*, 122 F.Supp 87 (D.C. Conn. 1953), the court found implied permission under circumstances of long continued surrender of the vehicle to the control of the first permittee, even though the owner had expressly forbidden his permittee son from allowing others to drive the loaned vehicle. *See also Country Mutual Insurance v. Bowe*, 300 N.E.2d 274 (Ill.App. 1973). In another context, the courts have shown concern in the realm of automobile rental agreements that rental companies not unduly restrict the availability of coverage under the omnibus clause by private agreement. *See, e.g., Atlantic National Insurance Co. v. Armstrong*, 52 Cal. Rptr. 569, 574 (1966); *Malmgren v. Southwestern A. Ins. Co.*, 255 P. 512 (Ca. 1927). Thus with standard form rental contracts, the concern has been shown that a prohibition clause is only meaningful if the prohibitee is made aware of the fact of prohibition. An otherwise broadly construed grant of permission may be, and has been, held to include the power to delegate that permission. In *Financial Indemnity Co. v. Hertz Corp.*, 38 Cal. Rptr. 249 (Ct. App. 1964), the factual issues before the court were whether the Hertz-prepared rental contract restriction was in such type and so placed as to reasonably come to the attention of one renting an automobile; and whether the restriction was read by or called to the notice of the renter.

> [T]he trial court found that 'Hertz did not have a reasonable basis for believing that the said restriction contained in the referred to Hertz contract would be carried out; and since Hertz had no such reasonable expectations, Hertz is deemed to have given implied permission to the user of the subject automobile without the said restriction.'

*Id.* at 254. The court further noted that where neither the renter nor his permittee was aware of such a restriction, Hertz, under such circumstances, "must be held to have anticipated such use by others than the renter with his permission, and, hence, impliedly consented thereto." *Id.*

43

The courts have also found implied permission under circumstances indicating the rental car company's recurring sufferance of the use of rental vehicles by different people, notwithstanding the fact of a prohibition clause in their standard form rental agreement. *See, e.g., Krupp v. Pan Air Corp.*, 183 So.2d 403 (La. App. 1966).

*Conclusion*

On the foregoing, we refuse to imply permission as a matter of law. Secondly, the extent of the record before us does not conclusively foreclose the possibility of permission despite the rental agreement's prohibitory language. We accordingly conclude that triable issues of fact are presented and that, therefore, defendants have not shown entitlement to judgment as a matter of law. T.C.R.P. 56. Motion denied.

It is so Ordered.